## William Eliot Smith v. Manning Mayfield.

1. JUDGMENTS—*When to be Reversed.*—The verdict of a jury must be palpably unjust, the result of passion or prejudice, or manifestly against the weight of the evidence, before an appellate court has the right to reverse a judgment founded upon it on the ground that it is not supported by the evidence, and the same rule applies to the findings of a court when exercising the functions of a jury.

2. BROKER—*When Entitled to Commissions—Sale of a Railroad to a Corporation—Ultra Vires no Defense.*—Under a contract between a syndicate, composed of certain individuals, and a broker, to effect a sale of certain street car lines to the Alton Electric Street Railroad Company, the broker is entitled to his commissions upon the consummation of the sale, and it is no defense to a suit against the persons composing the syndicate for such commissions to say that the company might interpose the defense of *ultra vires* if sued upon the contract.

3. SAME—*Sales—A Corporation Not Lawfully Organized — Defense to a Suit for Commissions.*—Where a broker, in pursuance of a contract with a syndicate, made a sale of certain street car lines to the Alton Electric Street Railroad Company, the fact that the company was not duly incorporated is no defense to a suit by the broker for his commissions.

4. EVIDENCE—*Execution of Contracts by Corporations.*—In order to entitle a contract made by a corporation under its corporate seal to be read in evidence it is sufficient to prove the signatures of the president and secretary, without making proof of the incorporation of the company.

5. SAME—*Of De Facto Corporation.*—While a certificate of the incorporation of a company, as recorded in the recorder's office of the county, may not be the evidence required to show that such company is a corporation *de jure*, it tends to show that it is a corporation *de facto*, and is admissible for that purpose.

6. CONTRACTS—*What May be Varied by Parol Evidence.*—After a broker had earned his commissions he called upon the person from whom they were due and requested payment. Not having the money he was given the following letter to a banker:

"As per our talk with Mr. White, I am to pay $3,600 as commission

or bonus on street railway deal, of which Mr. White said to us Mr. Mayfield was to receive $1,200. The only question between us is, when paid. My remembrance is distinct, this was to be paid from proceeds of note 4700. If you can assist Mr. Mayfield in this I shall be glad." The broker wrote the following indorsement on the letter : "Know all men by these presents, that I hereby authorize J. E. Hayner, or the cashier of the Alton Savings Bank, to collect the amount of twelve hundred dollars within named from William Eliot Smith, and apply same to the payment of my note of $1,000, dated on this day, at eight months' time, bearing seven per cent interest, executed by me to the Alton Savings Bank; and such balance as shall be left over to place to the credit of myself at said Alton Savings Bank." This was approved by the person writing the letter, and upon this letter and indorsement as approved the broker borrowed $1,000. It was held that these transactions did not constitute a contract between the parties which could not be explained, varied or contradicted by parol evidence.

7. PRACTICE—*Withdrawing Propositions of Law*.—It is not error to permit a party to withdraw propositions of law after they have been submitted to the court, but not passed upon.

**Assumpsit,** for broker's commissions. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1895. Affirmed. Opinion filed August 31, 1895.

EVERETT W. PATTISON, and TRAVOUS & WARNOCK, attorneys for appellant.

JOHN G. IRWIN, attorney for appellee.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

The second, third, fourth, fifth, seventh and ninth of the errors assigned amount to the same thing, that is, that the verdict is against the weight of the evidence. This proposition will be considered first.

Appellee sued appellant for commissions alleged to be due him for services as a broker in effecting a sale of two street car lines, familiarly called the Dummy Line and the Horse Car Line, to the Alton Electric Street Railroad Company.

The declaration alleged that appellant "undertook and promised the plaintiff, who was then and there a broker, that if he, the said plaintiff, would negotiate the sale of said

street car lines to one A. M. Farnum, or to a certain syndicate of capitalists who were then and there represented by the said Farnum, and should succeed in consummating a contract for the sale of said car lines to said Farnum for said syndicate, or to any corporation or company organized by him or them, or under his or their control, for the sum of $72,000, and in addition thereto the sum of certain costs and expenses of certain improvements, paving tax and other charges against said horse car line, which were then unascertained, but which were afterward liquidated, and stated by the defendant to the plaintiff to amount to the sum of $8,700, that he, the said defendant, in consideration thereof, would pay the plaintiff, for his services in conducting such negotiations, and in consummating such contract of sale, a commission of five per cent upon the price agreed to be paid for said street car lines, to wit, upon the sum of $80,700, which said commissions would amount, in the aggregate, to a large sum, to wit, the sum of $4,035."

The declaration further alleged that the negotiations, which were begun with Farnum, resulted in a contract of sale of said car lines to a certain corporation called the Alton Electric Street Railroad Company, composed of said Farnum and the members of said syndicate associated with him, for the sum of $80,700.

It is contended that the burden of proof was on appellee to show that appellant intended to bind, and did bind, himself, personally, and not his principals; and that appellee was entitled to his commissions as soon as a contract of sale was effected.

Conceding this to be the law, the question remains whether or not the evidence justified the court, trying the case without a jury, in finding that appellee had proved those propositions. To set forth the evidence, *pro* and *con*, would lengthen this opinion without benefit to the parties or to the profession. The verdict of the jury must be palpably unjust, or the result of passion or prejudice, or manifestly against the weight of the evidence, before an appellate court has a right, under the law, to reverse a judgment on the

ground that it is not supported by the evidence. The same rule applies to the findings of a court when exercising the functions of a jury. Coari v. Olsen, 91 Ill. 273. If appellee's testimony is to be taken as true, appellant was personally liable, and the commissions were due as soon as the contract of sale was made. Appellee is corroborated on this point by credible evidence. The fact that appellant may state the transaction differently furnishes no sufficient ground for interference with the judgment.

It is urged, in the next place, that it was incumbent on appellee to show that the Alton Electric Street Railroad Company was a corporation capable of binding itself, having power to carry out its contracts, and that the persons executing the contracts for the company were duly authorized to do so.

The contract between appellant and appellee, according to the latter's testimony, was that he should sell the car lines, *not to a corporation, but to " one Farnum and his associates,* who composed the syndicate of eastern capitalists which were about to build a line to North Alton." It was a matter of no moment to appellee whether the contract was made with Farnum and his associates as individuals, or to a corporation organized by them, provided the latter arrangement was sanctioned by appellant. Negotiations were pending for nearly a year, and the sale was finally consummated by a written contract between the corporations owning the dummy and horse car lines and the Alton Electric Street Railroad Company. This contract was made on February 21, 1893, and afterward, as appellee testifies, appellant congratulated him upon the " successful termination of the contract," stated that he was glad it " was finished up in that way," and also said he was sorry that he did not have the money to pay appellee's commissions. Appellant's letter to J. H. Hayner, dated February 27, 1893, stated that the only question between him and appellee related to the time when the commissions were to be paid.

These being the facts, it was not necessary for appellee to prove that the Alton Electric Street Railroad Company

was a corporation *de jure*, and there was sufficient evidence to show that it was a corporation *de facto*. But even if it was not a corporation at all, it was the thing to which appellant was willing to have the sale made, and he should not now be heard to defend on the ground that it was not duly incorporated.

This is a sufficient answer, also, to the argument that the Alton Electric Street Railroad Company, if sued on the contract, could interpose the defense of *ultra vires*, and that therefore appellee has not earned his commissions by a sale to such a company.

Therefore we deem it unnecessary to consider whether or not a corporation can be organized under chapter 32 of the Statutes of Illinois to build, construct and operate street railroads in and through the city of Alton, Upper Alton, North Alton, Godfrey township and suburbs, or whether or not such a corporation, if duly organized, can purchase horse and dummy roads. If appellee had been employed to effect a valid and enforcible contract of sale, with full power to select his vendee, then those questions might become important. In such case, if the contract was executory and the sale to a corporation which could resist the enforcement of the contract on the defense of *ultra vires*, there would be some reason for the claim that appellee had not earned his commissions. But these are not the facts of the present case. The contract between appellant and appellee contemplated a sale to a syndicate, composed of certain individuals, and a sale by parol to these persons was effected. The organization of a corporation by these individuals and the merging of the parol contract in a written contract on sale to this corporation, took place with the consent and active assistance of appellant, who had a large interest in and controlled the sale of, the horse car and dummy roads. This fact is shown by appellant's testimony, when he states that the terms of sale " were arranged on our side by Mr. Phinney and Mr. Hayner, and on the other side by Mr. White, Porter, and Mr. Farnum and Mr. Mayfield," about the time, or shortly before the

time, when the articles of incorporation were executed. Mr. Phinney was the secretary of the horse car and dummy roads. After the contract had been executed, appellant expressed himself as satisfied with the result. The sum of $8,700 was paid by Farnum and his associates on the contract. Under these circumstances, it would be rank injustice and a palpable misapplication of the law, to permit appellant to resist the payment of appellee's commissions on the ground that the Alton Electric Street Railroad Company may interpose the defense of *ultra vires* if sued on their contract.

Another point made by appellant is that the execution of the contract by the Alton Electric Street Railroad Company was not proved, and that, as a consequence, the court erred in admitting the contract in evidence. The contract purports to be executed in the name of the corporation and under the corporate seal, by A. M. Farnum, president, and J. G. White, secretary.

The signature of A. M. Farnum as president was proved by the testimony of appellee. There was also sufficient proof of the signatures of the president and secretary of the horse car and dummy roads. The objection to the introduction of the contract in evidence was that there was "no proof of the incorporation of the Alton Electric Street Railroad Company, and of the horse car line, or of the signatures." We have found the first objection to be untenable, and we believe the last to be equally so. All of the signatures were proved except that of J. G. White, the secretary. The whole evidence shows that a contract was made between these companies and that the contract was reduced to writing. Appellant himself swore that the agreement was consummated in February, and when asked to state the date of the "consummated agreement" he answered, "February 21." Appellant, in this language, undoubtedly referred to the written contract, which was dated February 21st. If this was a "consummated agreement" it must have been duly executed. And so it appears that the court did not err in admitting this contract in evidence.

It is said that the document of February 27, 1893, precludes a recovery by appellee.

It appears from the evidence that long after the negotiations had been completed and the contract between the car lines and the Alton Company had been made, appellee went to appellant to get the commissions which he had earned. Appellant said that he did not have the money with which to make the payment. Appellee stated that he was in need of money and urged payment. He asked appellant to indorse for him, and appellant declined to do this on the ground that it was contrary to his business obligations. Finally appellant said he would write a letter to Mr. Hayner, of the Alton Savings Bank, which would probably enable appellee to get some money. This letter, dated February 27, 1893, signed by appellant and addressed to J. E. Hayner, was as follows: "As per our talk with Mr. White, I am to pay three thousand dollars as commission, or bonus, on street railway deal, of which Mr. White said to us Mr. Mayfield was to receive twelve hundred. The only question between us is, when paid. My remembrance is distinct, this was to be paid from proceeds of note 4700. If you can assist Mr. Mayfield in this I shall be glad."

Appellee wrote and signed the following indorsement on this letter: "Know all men by these presents, that I hereby authorize J. E. Hayner, or the cashier of the Alton Savings Bank, to collect the amount of twelve hundred dollars within named from William Eliot Smith, and apply same to the payment of my note of one thousand dollars, dated of this day, at eight months' time, bearing seven per cent interest, executed by me to the Alton Savings Bank; and such balance as shall be left over to place to the credit of myself at said Alton Savings Bank." Under this indorsement, appellant wrote the word "Approved," and signed his name.

With the aid of this letter, appellee borrowed one thousand dollars from the bank. It is urged that this letter and indorsement constitute a contract between the parties, which can not be explained, varied or contradicted by parol evidence.

We can not assent to this proposition. The contract for appellee's services had been made long before and the commissions were now due. Appellant could not pay, and to relieve himself of the immediate payment of what he then justly owed, he gave this letter to be used in procuring a loan. There was no consideration for the support of a new contract. Appellee received less than he was entitled to, for he was entitled to immediate payment. It is true that these writings were proper evidence in the way of admissions, but it is also true that they were in no sense conclusive on appellee. Hence appellee was properly permitted to show that notwithstanding the statements of the letter and indorsement, he was entitled to his commissions, which amounted to five per cent of $80,700; that the statement that appellee was to receive twelve hundred dollars of the commissions, referred to a transaction between appellee and Farnum and his associates, whereby, under certain conditions, two-thirds of the commissions were to be paid to them; that those conditions were not fulfilled; and that the entire commissions were due to appellee.

The court assessed appellee's damages at $4,035, which was five per cent of $80,700. Afterward the amount was reduced to $2,835, and judgment was rendered therefor on the theory that the letter and indorsement amounted to an assignment of twelve hundred dollars of the commissions to the bank. The court could very well find, under all the evidence, notwithstanding the letter and the indorsement, that appellee was entitled to commissions on $80,700, less the amount assigned to the bank, and that he was not estopped to assert his right.

This disposes, also, of the eighth error assigned, which alleges that the damages are excessive.

The first error assigned calls in question the rulings of the court on the evidence.

There was no error in admitting in evidence the certificate of the incorporation of the Alton Electric Street Railroad Company, as recorded in the recorder's office of Madison county. While this certificate may not be the evidence

required to show that this company was a corporation *de jure*, it tends to show that it was a corporation *de facto* and was admissible for that purpose. The other points made under this head have been disposed of by the foregoing consideration of the evidence, or are of such trivial importance as to require no discussion.

The sixth error assigned and the last one to be considered, is that the court erred in allowing appellee to withdraw his propositions of law and in not passing upon the same. The record shows that the court gave both parties time for the submission of propositions of law, and that afterward appellee submitted certain propositions, while appellant submitted none. Thereupon the court gave appellee leave to withdraw his propositions, which had not been read, passed upon or considered by the court. No objection was made or exception taken to this ruling, then or thereafter, but in the motion for a new trial it was alleged that the court had erred in holding as the law, the propositions submitted by appellee. Of course the court did not err, as asserted, for the court did not hold any propositions of law, according to the record, which must prevail over the statements of a motion for a new trial.

But we desire to go on record as holding that it was not error for the court to permit appellee's propositions of law to be withdrawn. Appellant had the opportunity to test the court's knowledge of the law, and expressly declined to do so. He had no legal right to compel appellee to do for him what he refused to do for himself.

The judgment in this case should be, and is, affirmed.