[Civ. No. 1303. First Appellate District.—December 10, 1913.]

## TUCKER, LYNCH & COLDWELL, Inc., Respondent, v. M. J. HAWLEY, Appellant.

BROKERS—LEASE OF REAL ESTATE—RIGHT TO COMMISSION.—Under a contract providing that if a certain company "or any concern represented by" a designated person leases a building to be erected by the lessor, the lessor will pay a firm of real estate brokers a commission for services rendered in making the lease, the commission is earned upon the execution of a lease to lessees produced and presented by such person, irrespective of whether he has power to bind them.

ID.—BRINGING MINDS OF PARTIES TOGETHER—WHETHER NECESSARY.—Under such agreement it is unnecessary for the broker to bring the minds of the lessor and lessee together, and thus become the procuring cause of the execution of the lease. The agreement contemplates that the parties to the lease shall arrive at its terms themselves.

ID.—FORMATION OF CORPORATION BY LESSOR—EFFECT ON BROKER'S RIGHT TO COMMISSION.—The right of the broker to commissions under such contract is not affected by the fact that the building was erected by a corporation instead of by the lessor personally, as provided in the contract, the corporation having been formed for that purpose by the lessor, because of his lack of funds, and he being the owner of a large proportion of the stock.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Geo. C. Sargent, for Appellant.

N. C. Coldwell, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment for plaintiff and from an order denying defendant's motion for a new trial, in an action for services rendered as a real estate broker by the plaintiff to the defendant.

Defendant was the owner of a certain piece of real estate in San Francisco, which he desired to lease for warehouse purposes. On several occasions he had conversed with A. C. Hastings, an employee of the plaintiff, in regard to a tenant. In January, 1910, he again saw Hastings, showed him a working plan of a building he intended to erect, and told him that if he would bring him a tenant who desired a warehouse, he would pay the usual real estate commission. In response to an oral arrangement thereupon entered into, Hastings at once made efforts to find a tenant, and later Hastings in company with Colbert Coldwell, another employee of the plaintiff, saw the defendant in his office, and Coldwell told defendant that he thought that a tenant had been secured for the property, and asked to see the plans of the proposed warehouse so as to be able to discuss the matter with the prospective tenant. After spending some time in examining the plans it was seen that they were complicated, and the defendant suggested that the best thing to do was for Coldwell to bring the proposed tenant and the defendant together and let them discuss the matter. In this connection defendant further said, "Do this, and it will save going over the plans a number of times with you, and then by you with him, and I will protect you in your commisisons." Coldwell assented, and brought the defendant and B. F. Mackall together, the latter representing the Western Basket and Barrel Co. Thereupon, after some discussion as to the amount of plaintiff's commission, the defendant signed the following document:

"San Francisco, Cal., Jan. 8th, 1910.

"For value received the undersigned agrees that if the Western Basket & Barrel Company, or any concern represented by B F. Mackall, leases the building to be erected by

the undersigned in the block bounded by First and Second streets and Bryant and Brannan streets, San Francisco, Cal., that he will pay to Tucker, Lynch & Coldwell Inc. the sum of fifteen hundred ($1,500) dollars for services rendered in making the said lease. Above covers the entire building, a smaller section will be pro-rated. ·

"M. J. HAWLEY."

At the time of signing this document it was agreed that plaintiff would do all it could to get the Western Basket & Barrel Company to take a lease of the property, and defendant remarked that he wanted plaintiff to understand he expected he would have trouble in financing the building, but with the aid of a tenant he thought he could do so.

After many conferences, at which changes in the proposed building, the term of the lease, and the rent to be paid for the property, were discussed, the parties finally agreed upon the provisions of a lease; but the defendant being unable to finance the erection of the building, he organized a corporation for that purpose, and became the owner of one-half of the stock thereof. That corporation, named the Rincon Warehouse Company, as lessor, executed a lease to the Western Basket & Barrel Company, the Earl Fruit Company, and Comyn-Mackall Company ( a partnership), as lessees.

In regard to the stipulation in the agreement that the commission would be payable to plaintiff if the lease should be made to the Western Basket & Barrel Company or any concern represented by Mackall, it is conceded that Mackall represented said company, but defendant denies that he represented the Earl Fruit Company.

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning. . . . " (Civ. Code, sec. 1644) ; and the circumstances under which this agreement was made show that the word "represented" was used therein in its ordinary and popular sense. As employed in the contract it would include any concern for whom Mr. Mackall acted in the negotiations for the settlement of the terms of the proposed lease. It is quite plain, we think, that is was not the intention of the contract, as urged by the defendant, that Mackall should have power to bind a tenant proposed by him. It was sufficient if he produced and presented a person as a lessee to

sign the lease. The Earl Fruit Company was produced as a lessee of the property by Mackall at the suggestion of the defendant, who desired that company to execute the lease as a lessee, as security for the payment of the rent.

We agree with the position of the plaintiff that it was unnecessary for it as agent to bring the minds of the defendant and of the proposed tenants, or of the latter and the warehouse company, together, and thus become the procuring cause of the execution of the lease. Under the terms of most agency contracts for the sale or leasing of real property, perhaps that much would be required; but we do not think it is so in the present case, for under the provisions of the agreement the plaintiff was entitled to its commission whenever the Western Basket & Barrel Company, or any concern represented by Mackall, entered into a lease with the defendant for the property described. The plaintiff was not to bring the parties to an agreement as to the terms of the lease. The circumstances of the case show clearly that the agreement contemplated that the parties to the lease should arrive at its terms themselves. It is true that the plaintiff agreed when entering into the contract to perform services as a real estate agent to induce its client or clients to make the lease, and such services the trial court, upon ample evidence, found that the plaintiff fully performed.

The plaintiff rendered valuable services to the defendant before the agreement of January 8th was executed; and for the purpose of facilitating the transaction and at the suggestion of the defendant, the plaintiff brought the parties to the lease together, with the distinct understanding that if they agreed upon and executed a lease of the described property the plaintiff was to be entitled to one thousand five hundred dollars. After the execution of the agreement plaintiff did what it could to bring the parties to the lease to an understanding; and, as far as the point under discussion is concerned, we have no doubt the plaintiff was entitled to the payment agreed upon.

There is no merit in the contention that because the defendant did not personally construct the building, but that it was erected by the Rincon Warehouse Company, the condition of the contract was not fulfilled. That condition was that if the Western Basket & Barrel Company or any concern repre-

sented by B. F. Mackall, leased the building to be erected by the defendant on the property described, the commission would be paid. The defendant not being able to finance the erection of the building, formed a corporation to accomplish that purpose. The building was completed substantially as contemplated, and leased to the parties represented by Mackall. The description of the building as "to be erected by the undersigned" (M. J. Hawley) was sufficiently answered by a building erected by a corporation which he was instrumental in forming for that purpose and in which he owned a large proportion of the stock. The whole matter is one transaction which resulted in the defendant accomplishing the object sought when he employed the plaintiff. (*Steidl* v. *McClymonds,* 90 Minn. 205, [95 N. W. 906]; *Burke* v. *Cogswell,* 39 Minn. 344, [40 N. W. 251]; *Smith* v. *Mayfield,* 60 Ill. App. 266, 269.) It is true that the building erected was not constructed strictly according to the original plans submitted by the defendant to the plaintiff. Such plans were tentative only; and this point, like every other point made in the case by the defendant, is technical, and does not affect the merits of the case. It was not essential, to entitle the plaintiff to recover its compensation, that the defendant and the lessees should have entered into a lease upon the precise terms first named by the defendant. It was through the instrumentality of the plaintiff that the defendant and the lessees met and opened negotiations which, without interruption, ultimately culminated in the execution of the lease substantially as contemplated; and hence the plaintiff must be regarded as having earned its commission under the agreement of January 8th and entitled to the same. (Gross on Real Estate Brokers, p. 145, sec. 135; 19 Cyc. 249, et seq.)

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 9, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1914.