125 Cal.App.2d 326 (1954)
WALTER R. VIDLER, Respondent,
v.
JACK De BELL et al., Appellants.
Civ. No. 15846. 
California Court of Appeals. First Dist., Div. Two. 
May 19, 1954.
 Hardy, Carley & Thompson for Appellants.
 Millington, Dell'Ergo, Weeks & Morrissey and Wayne R. Millington for Respondent.
 KAUFMAN, J.
 This is an appeal from a judgment in favor of plaintiff and respondent in an action brought to recover a broker's commission upon the sale of real property belonging to appellants.
 This is the second trial of this suit. The first trial resulted in judgment for defendants, but a motion for new trial was granted on the ground of the insufficiency of the evidence to sustain the judgment. Following the second trial, a memorandum decision was rendered in favor of plaintiff, and the court directed plaintiff to prepare findings of fact and conclusions of law in accordance therewith. Judgment was rendered for the commission plus interest since the date earned and costs.
 Appellants, Jack De Bell and Doris May De Bell, his wife, were owners and developers of a tract of land in San Mateo County known as Oakdell Manor. It had been divided into lots upon which appellants were erecting homes and offering them for sale. Appellant testified that he placed a price of $3,500 on each and every lot in the tract, although the evidence showed that lots were never sold as such, but only improved with homes thereon.
 Respondent Walter R. Vidler was a duly licensed real estate broker, who had in his employ Martin Sweeney, a sales agent, from July 1, 1950, to September 8, 1950.
 On Sunday, July 9, 1950, Martin Sweeney was on appellant's property with appellant's knowledge and consent, for the purpose of showing and selling said property to prospective purchasers. A. R. Cramer, who ultimately purchased a home in this tract, drove into Oakdell Manor. Sweeney discussed with him the type of house he wanted, showed him a house then under construction which was already sold, that he liked, and arranged for an appointment between Cramer and Mr. De Bell. The following Monday, Sweeney *328 talked to De Bell about it, an appointment was made for Thursday of that week between De Bell and Cramer. Sweeney then discussed with De Bell the fact of protecting himself, since the house was not built as yet and construction would take some time. De Bell told him to prepare a letter for his signature. Sweeney did so, and De Bell signed it.
 The letter reads as follows:
 "Menlo Park, Calif."
 July 11, 1950.
 "To Walter R. Vidler, Realtor"
 2666 El Camino Real
 Redwood City, Calif.
 "Dear Sir:"
 "This will serve to acknowledge the introduction of Mr. and Mrs. A. E. Cramer by your salesman, Martin Sweeney."
 "Sweeney advised me that he has shown Mr. and Mrs. Cramer our homes. Our firm will build a house for these people on any property owned by us."
 "Our understanding is that 5% of the selling price will be paid to you as commission on any sale of our property to Mr. and Mrs. Cramer."
 Yours very truly,
 /s/ Jack De Bell""
 Sweeney testified that he thereafter introduced Cramer to Mr. Vidler, and went to the De Bell tract with Cramer in Cramer's car. They picked up De Bell and De Bell showed Cramer what lots were available for building. Cramer asked if lots were sold outright, but De Bell said not, that he did the building on them. Cramer pointed out two lots which he liked best. De Bell informed him that it would be a long time until he built on those lots because he had building materials on them, but Cramer said he was not in a hurry, that he liked those lots. De Bell said he would have to wait until he cleared the material. Those were Lots 29 and 30 of the tract. De Bell informed Cramer that a four bedroom home would cost somewhere between $30,000 and $34,000. De Bell said that $10,000 would handle the buying of the house. Then plans were discussed. De Bell told Sweeney to get in touch with Mr. Merryman, an architectural engineer, and make arrangements for Cramer to see him. This meeting lasted for about one hour and fifteen minutes. Sweeney called *329 Mr. Merryman to get an appointment for Mr. Cramer, who said that any day would be all right.
 Sweeney stated that he came up to San Francisco to see Cramer at his office, but that he was very busy so he didn't stay long. Cramer said he would see Sweeney later. When he called him later, near the end of July, he said he was going on a vacation, to let it ride until he returned. Later when he called Cramer, he was told to let it ride, that he would call him later. Sweeney went back to see De Bell who said: "Don't keep after him any more. You are going to lose him. ... You have got a letter to protect you. ... I will handle it. Let him believe that I'm taking care of it myself. ... Leave him go now. Otherwise you are just going to mess the whole thing up. ... I will take care of it myself. You have got your letter to protect you. ... Leave him alone. I will take care of him. You will get your commission whenever the deal is made." Sweeney said that he followed these directions. Thereafter he saw Cramer's car out in the tract, but he didn't approach Cramer thereafter. Later, when Sweeney had sold another house in the tract, he asked De Bell how it was coming along. De Bell said, "Just leave them alone; don't bother about him."
 Six plans were prepared for Cramer by the architect, bearing completion dates from October 3, 1950, to October 7, 1950, consisting of five sheets of house plans and one sheet, a plot plan for Lot 30. Mr. Cramer first appeared in the architect's office about two or three weeks before the plans were dated.
 When construction was completed on the Cramer home, Mr. Vidler and Sweeney demanded the commission which De Bell refused, contending that the agency did not make the sale. The transaction between De Bell and the Cramers was completed when the deed for Lot 30 was recorded on June 19, 1951.
 Appellant admitted in his testimony that no commission was due on the sale of real property until the purchase price had been paid by the buyer.
 There was testimony on the part of De Bell that although he did advise Sweeney to stop pestering Cramer, he did not tell Sweeney that he would take care of any sale to the Cramers himself. Cramer testified that he was primarily interested in renting, and not in buying when he first viewed the property, that in late July or early August he advised Sweeney to drop the matter, that he was not interested. He *330 then gave up any thought of renting or buying, and later about Labor Day located a lot in another tract which was held for him for a week, but as it could not be held longer, he had to look elsewhere. Two or three weeks later they returned to Oakdell Manor and looked at Lots 29 and 30. Mr. Cramer said these lots were still not for sale, but he invested in building plans, and after negotiations the Cramers and De Bell executed a written agreement on November 29, 1950, for the sale of Lot 30 and construction of a house, the total price of house and lot being $32,500. Construction began in January, 1951, and was completed in late May of that year.
 The trial court found that prior to July 11, 1950, plaintiff through his agent, and at the request of defendants, procured Mr. and Mrs. Cramer as purchasers of property owned by defendants; the letter quoted heretofore was found to have been signed by defendant Jack De Bell; that a contract was entered into on November 29, 1950, between Mr. and Mrs. Cramer and defendant De Bell for the purchase of Lot 30 and for the building of a house thereon according to plans and specifications provided by the Cramers; that on June 21, 1951, said lot and improvements were sold to the Cramers for a total sale price of $32,500; that plaintiff and plaintiff's agent were the procuring cause of the said sale. It was further found that the letter of July 11, 1950, had not been revoked, that it contained no termination date, and that subsequent to the signing thereof, a reasonable time for consummating a sale to the Cramers had not elapsed before a sale was consummated. It was further found that the commission became due and payable to plaintiff on June 21, 1951. These findings are amply supported by the evidence in the record.
 It is contended that the evidence does not support the finding that respondent's agent was the procuring cause of the sale of appellant's property. Appellants argue that the broker must perform the services required of him in accordance with the terms of the employment contract, and must in the absence of a special contract, be the procuring cause of a sale or transaction in order to be entitled to a commission thereon. (9 Cal.Jur.2d pp. 240-242, 79, 80.) [1] The letter of July 11, 1950, is in itself sufficient evidence that it was Sweeney, respondent's agent, who brought the ultimate purchasers in contact with defendants. Sweeney's testimony, which has all intendments in its favor on this appeal, was that he arranged the appointment at which he, *331 Cramer and De Bell inspected the property and at which meeting Cramer indicated a preference for Lots 29 and 30. Sweeney telephoned the architect to arrange for a discussion of prospective building plans with the Cramers. He called on Mr. Cramer in San Francisco and made other phone calls to him. He was then requested by Mr. De Bell to allow him to handle the matter personally, for Sweeney to stay out of it as he might lose Cramer, to let Cramer believe that De Bell was handling it himself, that Sweeney would get the commission when the deal was made. Appellants argue that uncontradicted evidence shows that Sweeney abandoned the deal because he admitted that he ceased pursuing the Cramers in August of 1950, that he had no part in the negotiations resulting in the agreement of November 29, 1950. This testimony is, of course, adequately explained by the fact that Sweeney had been requested to desist and to allow De Bell to continue negotiations with the Cramers. Cramer's testimony that he told Sweeney to drop the matter that he was not interested, was not necessarily believed by the trial court.
 [2] It is contended that the uncontradicted evidence shows a break in the chain of events. Sweeney was in touch with the Cramers for about one month, and the agreement to purchase was executed some four months after Sweeney's last contact with them. The interpretation was for the trial court as to whether or not this was a break in the chain of events. The period of inactivity is not as great as appellant would have us believe, however. Sweeney's last contact with the Cramers was sometime in August, and in the latter part of September the architect whom Sweeney had contacted for Cramer, began drawing the plans and specifications for the house for which a building contract was entered into on November 29, 1951, by De Bell and the Cramers.
 Appellant cites authorities to the effect that "procuring cause" is the cause originating in a series of events that without break in their continuity result in the accomplishment of the prime object of the employment of the agent. (Roth v. Thomson, 40 Cal.App. 208, 215 [180 P. 656]; Bail v. Glantz, 78 Cal.App. 49, 53 [248 P. 258].) The court here found the ultimate fact that plaintiff and plaintiff's agent were the procuring cause of the sale. The probative facts as reviewed above support this finding.
 It is contended that cases involving similar facts have denied recovery to brokers whose efforts have not been the *332 predominating effective cause of subsequent sales by vendors. Haines v. Wooster, 22 Cal.App. 197 [133 P. 998], is clearly distinguishable. In that case the broker was denied the commission by the trial court, it having been found that he had abandoned his contract of employment. It was held on appeal that since there was a substantial conflict in the evidence as to whether or not plaintiff had abandoned his contract, the appellate court could not interfere with that conclusion. Hill v. Knight, 209 Cal. 14 [285 P. 691], is distinguishable. In that case plaintiff's broker called the attention of the purchaser to the property, but did nothing further upon the purchaser saying he was not interested. Furthermore plaintiff never communicated with the defendants concerning this prospective purchaser, and the purchaser did not disclose to sellers that he had contacted plaintiff. Hence defendants made the sale in good faith without any knowledge that plaintiff had called it to the attention of the purchaser. Fitzpatrick v. Underwood, 17 Cal.2d 722 [112 P.2d 3], was an appeal on the judgment roll alone in a case where the court found against plaintiff broker on his claim to a commission. The ultimate facts found were that it was not true that plaintiff produced for defendant a purchaser ready, willing or able to purchase on terms satisfactory to defendant, nor that defendant had sold the property to any purchaser produced by plaintiff. Since this appeal was on the judgment roll, findings of probative facts which appeared to conflict with the ultimate facts found, had to be disregarded.
 It is said in 9 California Jurisprudence 2d 255, section 87, that "Where a broker's employment agreement does not contemplate that he shall procure a customer on certain terms, he is not obliged to bring the minds of the principal and the customer to an agreement. He earns his commission when he procures a customer on terms to be arranged with the principal." (See Tucker, Lynch & Coldwell v. Hawley, 23 Cal.App. 460 [138 P. 358]; Merwin v. Shaffner, 31 Cal.App. 374 [160 P. 684].) The present contract appears to be of this latter type, for defendants stated that they would build a house for the Cramers on any property owned by them (and Lot 30 was then owned by them) and would pay 5 per cent of the selling price (not specified) on any sale of their property to the Cramers.
 Appellants urge error in the trial court's failure to find upon the issue of abandonment arguing that this is a material issue and that therefore the absence of a finding thereon is *333 reversible error. (James v. Haley, 212 Cal. 142 [297 P. 920]; Taylor v. Taylor, 192 Cal. 71 [218 P. 756]; Hagge v. Drew, 73 Cal.App.2d 739 [167 P.2d 263]; Clements v. Lanning, 89 Cal.App.2d 817 [202 P.2d 98].) Appellants in their second defense alleged that the Cramers told Sweeney to drop the matter, that they were not interested, that six or seven months after the signing of the letter of July 11, 1951, the Cramers sought out defendant Jack De Bell, that solely as a result of De Bell's efforts the property was sold to the Cramers, and that at no time did plaintiff or his agents procure the Cramers as purchasers of real property belonging to defendants.
 [3] It is the rule that where findings are made upon issues which determine a cause, other issues become immaterial and do not constitute prejudicial error. [4] Where the matters alleged in the answer do no more than contradict some allegation of the complaint as to which findings are complete, it is unnecessary to make specific findings thereon. (24 Cal.Jur. 947-950, 190.) [5] The complaint alleged that respondent through his agent procured the Cramers as purchasers of the property owned by defendants. The essence of the second defense is that respondent did not procure the purchasers. There is a finding that he did. The ultimate fact having been found, there is no necessity for a finding on every evidentiary fact alleged in the defense.
 [6] There was no error in the failure to find upon the issue of whether authority was granted to sell Lot 30. The letter of July 11, 1950, was found to have been executed by appellant Jack De Bell, and it clearly covers any property owned by appellants. If a finding had been made on the particular issue, it would have to have been made in favor of respondent.
 Finally, it is contended that the evidence does not support the finding that the sale was made while the letter of authority of July 11, 1950, was in effect. [7] What is a reasonable time is ordinarily a question of fact, and that fact was decided by the trial court in favor of respondent upon substantial evidence. Furthermore, it is interesting to note that appellants in their answer state that "a reasonable time (six months)" elapsed after the signing of the writing, and no sale was consummated. By appellants' own admission six months would have been a reasonable time. From July 11, 1950, until November 29, 1950--the date established at the trial as the date of the execution of the written agreement for *334 the sale of Lot 30 and for the construction of the house--is a little more than four months and a half, well within the six-month period.
 All of the trial court's findings herein appear to be amply supported by the evidence, and the attacks thereon by appellants are without merit.
 Judgment affirmed.
 Nourse, P. J., and Dooling, J., concurred.