[Civ. No. 24301. Second Dist., Div. Three. Aug. 10, 1960.]

WILLIAM JUSTICE, Respondent, v. G. W. ACKERMAN et al., Appellants.

Krag & Krag and William L. Mock for Appellants.

Koos & Lindstrom and John M. Schwartz for Respondent.

VALLÉE, J.—Appeal by defendants from an adverse judgment in an action to recover a broker's commission on the sale of a bowling alley, saloon, and restaurant.

The only question for decision is whether the evidence supports the finding that "plaintiff was the effective and procuring cause of the sale," in other words, that plaintiff produced purchasers able, ready, and willing to buy.

Defendants, as partners, were the owners of a bowling alley business consisting of a liquor license, stock in trade, fixtures, equipment, and good will. On January 21, 1957, defend-

ants gave plaintiff an exclusive listing in writing in which they authorized him to sell the business and agreed that in the event of a sale during the effective period of the listing they would pay him a commission on closing of escrow.

The listing expired March 1, 1957. At that time plaintiff had not procured a buyer for the business. Defendants refused to renew the exclusive listing but agreed with plaintiff that he continue his efforts to obtain a buyer. Plaintiff did so through his salesman, Mr. McAlwee.

In May 1957 plaintiff contacted a Mr. Linstedt. Linstedt and defendants negotiated until the end of July 1957. About July 10 McAlwee contacted Wilbur Anderson and Gilbert Robbins and brought them into the negotiations with defendants jointly with Linstedt. During the negotiations plaintiff received from defendants profit and loss statements covering August 1, 1955 to July 31, 1956, and August 1, 1956 to May 31, 1957, a balance sheet dated July 31, 1956, one dated January 31, 1957 and one dated March 31, 1957, all of which he gave to Robbins on July 16, 1957. He told defendant G. W. Ackerman he had done so. Anderson returned the statements to plaintiff about two weeks later. During the negotiations plaintiff also gave Anderson and Robbins a letter which showed the earnings of the business, its financial condition, and its earning potentialities. During that period plaintiff also gave defendants a copy of a written offer by Linstedt to defendants to buy the business for $150,000.

About July 31 this conversation took place between defendant G. W. Ackerman and Mr. McAlwee: Ackerman: " 'Well, Mac, I will tell you, we haven't got any deal from Mr. Lindstead [*sic*] and we haven't got any deal for you.' " McAlwee: " 'Mr. Ackerman, what do you mean by that, you haven't got any deal for Mr. Lindstead [*sic*] and you haven't got any deal for me?' " Ackerman: " 'Well, just what I said.' " McAlwee: " 'Well, are you selling the bowling alley to somebody else?' " Ackerman: " 'I would rather not say.' " McAlwee: " 'Well, what happens to Robbins and Anderson, are they buying it?' " Ackerman: " 'I would rather not say.' " McAlwee: " 'Then you don't wish to accept any offer from Mr. Linstead [*sic*] at all?' " Ackerman: " 'No sir, I do not.' " McAlwee: " 'What happens to Mr. Anderson, what has happened to him?' " Ackerman: " 'You will have to find out yourself.' " McAlwee: " 'I will.' "

On August 8, 1957, without the knowledge of plaintiff, defendants entered into a written agreement with Anderson and

Robbins to sell the business to them for $150,000. The court found: "After securing the information from the plaintiff, as aforesaid, and sometime between that time and the end of July, 1957, and without the advance knowledge or consent of the plaintiff, the said Wilbur W. Anderson and Gilbert L. Robbins went directly to the defendants, over the plaintiff's head, and, by direct negotiations with the defendants, did, on or about August 8, 1957, purchase Hollymont Bowl from the defendants at a price of $150,000.00"; "Before direct negotiations started between the said Wilbur W. Anderson and Gilbert L. Robbins on the one hand and the defendants on the other, the defendants knew that the plaintiff had negotiated with the said buyers. By written notice received by the defendants on August 2, 1957, the plaintiff notified the defendants that he had procured Wilbur W. Anderson and Gilbert L. Robbins and would claim a commission in event the defendants sold to them"; "The said Wilbur W. Anderson and Gilbert L. Robbins, the ultimate buyers, were led to the defendants through the instrumentality of the plaintiff in his capacity as the defendants' broker. The plaintiff was the effective and procuring cause of the sale to the said buyers."

 It is the general rule that when a broker is employed to effect a sale of property, he is entitled to the agreed compensation after he has procured a buyer able, ready and willing to buy on the terms prescribed in the contract of employment. (*Phelps* v. *Prusch*, 83 Cal. 626, 628 [23 P. 1111].)

 The broker has earned his commission when he has performed such services as constitute the proximate and efficient cause of the sale. (*Beazell* v. *Kane*, 127 Cal.App.2d 593, 595 [274 P.2d 224].) Where a broker's employment does not contemplate that he shall procure a buyer on certain terms, he is not obliged to bring the minds of the principal and the buyer to an agreement. He earns his commission when he procures a buyer on terms to be arranged with the principal. (*Vidler* v. *De Bell*, 125 Cal.App.2d 326, 332 [270 P.2d 120].)

 It is not necessary that the broker personally conduct the negotiations between his principal and the other party to the transaction, or that he be present when the bargain is completed. After a broker procures a customer able, ready, and willing to enter into the transaction on terms acceptable to the principal, neither the principal nor the customer may defeat the broker's claim to compensation by concluding the transaction without his aid. (*9 Cal.Jur.2d* 260, § 92.) The execution of a contract of sale by the owner of realty is con-

clusive proof that he was satisfied as to the qualifications of the buyer and of his ability to perform the contract, thus rendering the owner liable for the payment of the broker's commission. (*Austin* v. *Richards*, 146 Cal.App.2d 436, 439 [304 P.2d 132].)

Applying the law to the facts, we think it manifest that the evidence and the reasonable inferences to be drawn therefrom support the express finding that "plaintiff was the effective and procuring cause of the sale" and the implied finding that he produced buyers who were able, ready, and willing to buy and who in fact did buy, as the trial court found, "over the plaintiff's head." It is agreed that the time limit fixed in the writing of January 27, 1957, was waived. The waiver lasted until plaintiff had procured the buyers since, during that time, defendants were encouraging plaintiff to render his services and he was diligently exerting his efforts to induce Anderson and Robbins to buy. (See *Augustine* v. *Trucco*, 124 Cal.App.2d 229, 239 [268 P.2d 780].) The evidence we have related demonstrates that the implied finding the services performed by plaintiff constituted the proximate and efficient cause of the sale is amply supported.

Affirmed.

Shinn, P. J., and Ford, J., concurred.