[Civ. No. 12085. Second Appellate District, Division One.—November 6, 1940.]

LeROY E. CARPENTER et al., Appellants, v. LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation), Respondent.

Robert R. Ashton for Appellants.

LeRoy M. Edwards, T. J. Reynolds and Neil G. Locke for Respondent.

THE COURT.—This is an appeal from a judgment for defendant upon a verdict of the jury directed by the court,

and an attempted appeal from an order denying a motion for a new trial.

The action is one in which plaintiffs seek damages, both general and punitive, for the alleged wrongful, unlawful and malicious discontinuance of electrical service at plaintiffs' home, which theretofore had been supplied by defendant.

From the evidence adduced at the trial, which consumed four days, it appears that early in 1934 plaintiffs questioned the truth of defendant's monthly statement on account of electricity shown by the meter to have been used. A letter from plaintiffs to defendant in that regard, under date of February 5, 1934, is as follows: "Dear Sirs: Received your sheet showing the electric readings requested. Now, please advise how you obtained these. There is no way to secure them except by admittance to the house, and no one has asked to be allowed to enter for that purpose. During six weeks of the time shown, the house was unoccupied, and we were out of the city. Yours very truly, L. E. Carpenter." A second letter under date of February 19, 1934, is as follows: "Dear Sirs: Enclosed is check for gas as per your bills of Jan. 6.89—Feb. 6.13, 1302. Under date of Feb. 5, I wrote you concerning the electricity, asking an explanation—You have not answered that letter. I am withholding payment until you straighten this matter out as it should be. Yours truly, L. E. Carpenter."

In reply to the above letters defendant informed plaintiff in a letter dated March 6, 1934, that its assistant chief meter reader reported that the meter could be read through the window. Thereafter it appears that other meter readers reported to the contrary. In any event, the dispute over the meter readings continued for over a year.

Briefly, the record reveals evidence of the following pertinent facts: That the meter was located on the screen porch; that the screen door was covered with a canvas on the inside; that the door was always locked; that time and again the defendant's meter readers were required to return by special appointment or otherwise to gain access to the meter; that the board of public utilities and transportation investigated the matter at the request of defendant; that plaintiff protested the investigation and questioned the board's authority; that considerable correspondence regarding the accounts and the payment thereof and to the controversy generally went on

between plaintiffs and defendant; that defendant endeavored to get the meter moved outside or to an accessible spot; that plaintiffs had withheld the payment of their account repeatedly; and finally, that defendant, after due notice and although all accounts were paid, shut off the electricity on February 28, 1935.

Plaintiffs' complaint contains the allegation that "the only reason given by said defendant corporation for disconnecting said electrical service after the same had been cut off, was that plaintiffs' account was too small and too *troublesome* to bother with". (Italics added.)

■■ The defense was based on the claim by defendant that its rules, adopted in accordance with law, had been followed at all times in connection with its action in discontinuing electric service to plaintiffs.

The trial court, following the motion by defendant for an instructed verdict, summed up the law and facts in part as follows: "In a sense there was a dispute about something, running over a period of years; and I assume that there would be a dispute about something as long as the service was continued, in this case. When Mr. Carpenter questioned the amount of the bills, the company, as I understand the evidence, wrote off the amount that was in dispute. He questioned the accuracy of readings made through the screen. For a time it appears that someone connected with the defendant corporation contended that an accurate reading could be made through the screen, and thereafter, however, persons in authority conceded that the meter could not be properly read through the screen. Then Mr. Carpenter, as I understand his position, which has been very difficult for me to comprehend, when the representatives of the corporation finally definitely agreed, both verbally and in writing, that the meter could not be read through the screen, took the position, 'Well, you said it could, now you read it through the screen.' There was no dispute as to the amount of the bill that was pending. . . . We have definitely now in evidence the rules and regulations of the company. It appears from the evidence that those rules were on file with the railroad commission approximately 15 years or thereabouts prior to this controversy. The mere long-continued period without question would appear to be at least a tacit holding by the railroad commission that they were reasonable. . . . There is

no issue of fact to be presented to the jury. It is undisputed that the rule was adopted. It was on file. . . . Notice was given in accordance with the rules. The basis for the application of the rule was the inability to read the meter under the conditions that existed and for which plaintiff contended for a year and still contends in his evidence. So that the case, as to the application of the rule, is made out by the plaintiff, himself.''

In connection with its instructions to the jury the court commented further, as follows: ''There is no dispute as to the inability to read or properly read the meter. That is a point that plaintiff contended for. That was his first contention, that the meter had not been properly read. Therefore, it is undisputed that at times the curtain was drawn in such way that no reading at all could be had. There is, as I indicated, no issue upon that point. The plaintiffs contend that the meter could not be properly read. The representatives of the defendant corporation concede that the meter could not be properly read and at times read at all. Therefore, notice was given, either that the meter be placed in some accessible place or the service would be discontinued, which is without dispute; and it is without dispute that no change in the location of the meter was thereafter made. So, as a matter of law, the court is compelled to hold, on the undisputed testimony, that the defendant corporation had a legal right to discontinue the service; and when one acts legally, there is no cause of action.'' The foregoing comments by the trial judge are in accord with the record.

That the rules and regulations as proved at the trial, under and by virtue of which defendant acted in the premises, were controlling and constituted a complete defense, there can be no question. No constitutional issue is involved with relation to such rules and regulations and the operation thereof as affecting the rights of the plaintiff. The reasonableness of such rules and regulations, as correctly pointed out by respondent, is a question addressed to the judgment of the governmental agency charged with the determination thereof —in this instance, the Railroad Commission of the State of California. That commission having acted with regard thereto, either directly or by implication, as the evidence shows without contradiction, the rules became and were binding on defendant company. The reasonableness of such rules

and regulations, in the circumstances, was conclusive on the trial court. (Public Utilities Act, sec. 63b, et seq.; *Live Oak Water Users' Assn.* v. *Railroad Com.,* 192 Cal. 132 at 139 [219 Pac. 65]; and to the same effect see, also, *Truck Owners & Shippers, Inc.,* v. *Superior Court,* 194 Cal. 146 [228 Pac. 19].)

A review of the record discloses that in no event would the evidence have supported a verdict in favor of plaintiff as a matter of fact and as a matter of law. When, indulging in every reasonable and legitimate inference which may be drawn from the evidence and disregarding the fact, if it is a fact, that the evidence is conflicting, and when in such circumstances the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff, it is then the trial court's plain duty to grant a motion for an instructed verdict. (*Thomsen* v. *Burgeson,* 26 Cal. App. (2d) 235 [79 Pac. (2d) 136]; *Collins* v. *Nelson,* 16 Cal. App. (2d) 535 [61 Pac. (2d) 479].)

For the foregoing reasons the judgment is affirmed.

No appeal lies from the order denying the motion for a new trial and the same is therefore dismissed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 2, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1940. Carter, J., voted for a hearing.