[Civ. No. 12185.  Second Appellate District, Division One.—January 21, 1941.]

OLIN W. POWERS, Appellant, v. RALPH CHERRY, Respondent.

Murchison & Clopton for Appellant.

Elbert E. Hensley for Respondent.

YORK, P. J.—This is an action for personal injuries received by appellant on or about the 5th day of March, 1938,

while walking along Ventura Boulevard near its intersection with Vineland Avenue, and is based upon the alleged negligent operation of an automobile by respondent. At the conclusion of appellant's case respondent moved for a nonsuit which motion was by the court denied. At the conclusion of the trial the court on respondent's motion directed a verdict in his favor and denied appellant's motion for a new trial. This appeal is prosecuted from the judgment which was thereafter entered pursuant to said directed verdict, as well as from the order denying a new trial.

The facts which form the basis of the instant litigation are as follows: Ventura Boulevard in the city of Los Angeles extends in a general easterly and westerly direction and is approximately seventy feet wide between Lankershim Boulevard on the east and Vineland Avenue on the west. On March 5, 1938, as the result of extremely heavy rain storms which had washed out bridges and interrupted transportation in the North Hollywood district, the described portion of Ventura Boulevard was partially covered with sand, mud and other debris, and for some distance east and west thereof traffic was blocked off except for the cars of residents of the said district. Just north of and adjacent to Ventura Boulevard in this area was a Pacific Electric Railway right of way and tracks which gradually circled away from the boulevard as it progressed westerly toward Vineland Avenue where the tracks proceeded due north. At approximately 10 o'clock in the evening of said March 5th, appellant was on his way from his place of business to his home which was situated near Vineland Avenue north of Ventura Boulevard, and was walking westerly from Lankershim Boulevard on the south side of Ventura Boulevard, using a footpath slightly south of the south curb thereof. When he reached the M. & M. Auto Court which was two or three blocks west of his starting point, appellant crossed Ventura Boulevard from the south to the north side, in order to reach the aforesaid Pacific Electric tracks which were higher than the surrounding terrain, were free from debris and mud, and furnished a direct route to appellant's home.

As he crossed to the northerly side of the boulevard, appellant encountered mud and debris which extended out into the highway from the northerly curb thereof, whereupon he turned and walked in an easterly direction for fifteen or twenty feet along the edge of this debris which he testified

was six or seven feet south of said northerly curb, "looking for a place to get through the debris and get onto the track running parallel to the boulevard." As he was so walking in an easterly direction along the edge of this debris, appellant saw respondent's automobile approaching him from the east at a distance of 100 to 150 feet traveling almost in the center of the highway. When respondent's automobile was thirty or forty feet from him, appellant testified that it swerved toward him and that he "jumped to get out of the way, or tried to run from it", and was hit on the back of his legs with the bumper of the automobile. He was thrown by the force of the impact, thereby sustaining painful and serious injuries.

Respondent testified that he was traveling westerly at a speed of thirty miles per hour on the northerly half of Ventura Boulevard about two feet to the right of the double white line in the center thereof, preparatory to making a left-hand turn, his home being located on the south side of Ventura Boulevard about a block west of the place where the accident occurred. He testified that mud, sand and debris extended from the north curb to the single white line in the center of said north half of the highway, or a distance of approximately fifteen feet, and that, as he proceeded toward the point of impact, there was a space of from three to five feet between the right-hand side of his car and the edge of the debris; that when he was 150 or 170 feet east of the point of the impact he saw appellant, who appeared to be standing five or six feet south of the north curb; that a car had pulled out from the south curb near the M. & M. Auto Court and the lights from it shone across the boulevard so that respondent got a glimpse of appellant, who was dressed in light colored clothing and was bareheaded; that when this parked car came out toward the center of the street it seemed to be making a "U" turn, and respondent took his foot off the gas and swung three or four feet to the north from the center of the boulevard to a point where he was partially astraddle the single white line which marked the center of said north half of Ventura Boulevard. In making this operation, respondent traveled about forty feet and did not again see appellant until the point of impact when he "saw a body just coming right directly in the car from the side, and it was just practically at the same moment of the impact"; that the impact occurred approximately fifteen feet south of the north curb of Ventura Boulevard and opposite the M. & M. Auto Court, at a point

which he described as being five feet south of the edge of the debris; five feet north of the single white line in the center of the north half of the highway; that the distance between the right side of his car and the edge of the debris at the place of the impact was five or six feet. He also testified that he traveled forty or fifty feet after the collision before he brought his car to a stop; that the impact threw appellant sidewise from the automobile and he was found lying on the edge of the debris. At the time and place in question there was no other traffic on the same side of the highway in the vicinity of respondent; his windshield was clear, his headlights were good and capable of illuminating objects for a distance of from 120 to 150 feet in advance of his machine, and the street lights in the vicinity were in operation. Furthermore, he testified that he at no time used his brakes from the time he first saw appellant at the edge of the pavement until the collision occurred.

It is established law in this state with reference to the authority of a trial court to direct a verdict that, ''Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be compelled to reverse it upon appeal or a trial court set it aside, a court is not justified in taking a case from a jury and itself rendering the decision.'' (*Gish* v. *Los Angeles Ry. Corp.,* 13 Cal. (2d) 570, 572 [90 Pac. (2d) 792].)

A review of the evidence herein shows that appellant was walking easterly along the edge of the debris on the north half of Ventura Boulevard facing traffic traveling to the west; that respondent was 150 feet away when he first saw appellant at the side of the boulevard and that he thereafter continued to drive forward without keeping appellant in view. It is also shown that respondent either swerved toward appellant or changed the course of his automobile and that within forty feet of such change of course the collision occurred.

The condition of the boulevard at the point in question was of a very unusual character because of the damage caused by the rain storms, above referred to. The evidence is uncontradicted that appellant was on the north half of Ventura Boulevard either walking directly on or very close to the

edge of the mud and debris when he was first glimpsed by respondent, as well as at the time of the impact.

It is clear that the evidence adduced at the trial herein could as well support an inference of negligence on the part of respondent as one of contributory negligence on the part of appellant.

As was so aptly stated in *Gish* v. *Los Angeles Ry. Corp.*, *supra*, at page 583: "It is clear that an inference of the truth of facts essential to a cause of action will support a judgment which may be rendered in accordance with such facts. (19 Cal. Jur., pp. 704, 717.) And although to the comprehension of the trial judge, evidence to the contrary of such an inference may greatly preponderate, nevertheless the ultimate question of the weight that should be accorded to the evidence which may have been presented by the respective parties to the litigation is one for the exclusive original determination of the jury."

It follows that the jury in the instant case should not have been directed to return its verdict in favor of respondent.

The judgment is reversed. The appeal from the order denying motion for new trial is dismissed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied February 13, 1941.