[Civ. No. 3689.   Fourth Dist.   Nov. 4, 1948.]

IMPERIAL-YUMA PRODUCTION CREDIT ASSOCIATION (a Corporation), Respondent, v. E. S. SHIELDS et al., Appellants.

Leslie L. Burr for Appellants.

George R. Kirk for Respondent.

GRIFFIN, J.—This case was before this court before. The appeal was based on an order granting a new trial. (*Imperial-Yuma Production Credit Assn.* v. *Shields*, 74 Cal.App.2d 932 [169 P.2d 671].) The nature of the proceedings, pleadings

and factual background are the same as there related. The original action was based on a promissory note for $6,281.12, signed by defendants, upon which there was an unpaid balance in the sum of $3,422.48. Its due execution was admitted in the answer. Defendants denied that there was anything due thereon and filed a cross-complaint alleging that $2,310.88 was due them because plaintiff had failed to give them credit on the note for the sale of 1,010 sacks of wheat. Secondly, that in 1941, defendants planted a crop of barley and that it was the understanding that at the proper time the acreage in barley was to be pastured and the return from the pasturage was to be paid to plaintiff; that plaintiff failed to have the pasturing done at the proper time and the crop, consisting of 120 acres, was destroyed and that if permitted to be pastured at the proper time that acreage would have produced a grain crop valued at $3,500 and therefore defendants suffered this amount of damage less a credit of $298.88 already allowed for such pasturage.

The case was tried before a jury on April 22, 1947. At the conclusion of the evidence the trial judge, apparently believing that the defendants had failed to substantiate their alleged claim under their answer and cross-complaint, granted a motion on behalf of plaintiff for an instructed verdict in the amount sought in plaintiff's complaint and directed that defendants recover nothing upon their cross-complaint. A verdict, in this form, was presented to it. The jury retired for deliberation and on returning refused to obey the court's instruction. Counsel for plaintiff moved that the jury be dismissed and also moved for a judgment for plaintiff as prayed for and asked the court to enter such a judgment. Counsel for defendants then moved for a mistrial and asked that the jury be discharged. Later, the court denied defendants' motion and granted that of plaintiff and on the same day a written judgment in favor of plaintiff was presented to the court and signed. A motion for a new trial and to vacate the judgment was denied. This appeal followed.

The defendants argue that it was error to grant plaintiff and cross-defendant's motion for entry of judgment by the court and to later enter such a judgment; that the denial of the motion of defendants, upon the refusal of the jury to return a directed verdict for the plaintiff was error; and that the judgment of the court is void as being in violation of section 616 of the Code of Civil Procedure; and that it was

error to deny defendants and cross-complainants' motion for a new trial and to deny the motion to vacate the judgment.

We are guided first by the general rule with reference to the authority of a trial court to direct a verdict. It is the established law of this state that the power of a court to direct a verdict is the same as the power of the court to grant a nonsuit. Quoting from *Estate of Flood,* 217 Cal. 763 [21 P.2d 579], it is said:

"A nonsuit or a directed verdict may be granted 'only when, *disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from the evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' "

A similar statement of the rule is set forth in *Gish* v. *Los Angeles Railway Corp.,* 13 Cal.2d 570 [90 P.2d 792], and it is there said that a court is not justified in taking a case away from the jury and itself rendering the decision unless it can be said that, as a matter of law, no other conclusion is reasonably deducible from the evidence. (See, also, *Powers* v. *Cherry,* 42 Cal.App.2d 489 [109 P.2d 361].)

We must therefore first analyze the evidence presented, in the light of this rule, to determine whether or not there was sufficient substantial evidence presented in support of the defendants' answer and cross-complaint upon which the jury could have found in their favor.

Plaintiff offered in evidence the promissory note as well as its books of account showing all credits given defendants. A crop mortgage and a chattel mortgage on certain described farming implements were executed by defendants as security for the payment of the original note. Assignments of *proceeds* of sale of mortgaged crops for 1940, 1941 and 1942 were obtained from defendants and also the Warner Seed Company, where defendants delivered their crops. A similar assignment was signed respecting *proceeds* from rentals of certain lands for forage for 1940-1941. Letters in evidence show that defendants wrote plaintiff in September, 1940, acknowledging an indebtedness and expressing a great desire to pay it off. The Warner Seed Company's records were received in evidence. They disclose an account for all grains it claims it received from defendants and of the payments made to plaintiff which were the *proceeds* under the assignment.

This action was instituted in 1944. The farm implements and machinery given as security under the chattel mortgage are all worn out and have no particular value.

Plaintiff's agent testified that Mr. Shields admitted owing the balance due but claimed "Times were pretty tough."

Considerable testimony was received in respect to the amount of grain delivered to the Warner Seed Company by defendants. Defendants contend that they delivered more than the records of the Warner Seed Company reflect by their books.

Since the publication of the opinion in 87 A.C.A. 221 [196 P.2d 69], counsel for defendants made application to augment the record by bringing up additional testimony omitted from the original record on appeal. This request was granted. It now appears from that record, from the evidence produced and proffered, that defendants did deliver to the Warner Seed Company more grain than was reflected by their books of account; that plaintiff company was the one who *directed* that defendants take their grain to the Warner Seed Company for processing and that the seed company did not give credit to defendants for the true amount of grain received by it; that if such is the case, under section 1476 of the Civil Code, defendants would be entitled to credit for the amount of grain actually delivered, notwithstanding the fact that the seed company notified plaintiff that defendants were entitled to a lesser amount as a credit on their note. Section 1476 of the Civil Code provides:

"EFFECT OF DIRECTIONS BY CREDITORS.

"If a creditor, or any one of two or more joint creditors, at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance."

A rehearing was granted for the purpose of giving further consideration to this evidence. There is in evidence an agreement between defendants and plaintiff company, that in accepting the loan, defendants agreed (par. 4, subd. (b) Exhibit 2) : "Shipments to marketing agencies or other purchasers are to be consigned in the name of undersigned and your Association as joint consignors with direction to the consignee to remit all proceeds of sale to your office, together with account sales, . . . said consignments shall be made only to responsible agencies or other purchasers after first

procuring your consent to the agencies or other purchasers *chosen by undersigned* and after undersigned has first executed in your favor an assignment of proceeds of sale of said security." Defendants' Exhibit A is an assignment, apparently prepared by plaintiff on a form furnished by it which is signed by defendant grower. It assigns all proceeds of sale of certain crops of wheat produced by grower in 1940, 1941 and 1942, "which grower agrees to deliver to Warner Seed Company." This agreement is accepted by Warner Seed Company. The record discloses, from the testimony of Mr. Shields, that 80 acres of wheat were involved under this assignment; that it was threshed in May of 1940, and delivered to the Warner Seed Company. He specifically testified that he was going to put it in a certain warehouse but the "Production Credit ordered me to take it to the Warner Seed Co. for storage." The "last part" was ordered stricken as a conclusion. Defendants' attorney then proceeded to inquire as to who ordered defendants to take the wheat to the Warner Seed Company. The court sustained the objection after several attempts to show that fact. It appears to us that defendants were entitled to show who ordered the wheat crop taken to the Warner Seed Company.

Defendant Shields was then shown 11 tickets or forms of receipt of the Warner Seed Company (defendants' Exhibit B). He testified that they were receipts for wheat turned over to his driver by that company; that they have noted on them the number of sacks and their weight; that there were 1,010 sacks of wheat in all, delivered in 1940. These receipts went into evidence without objection. He then testified that from the records of the Warner Seed Company that company only gave him credit for approximately 500 sacks of wheat.

One witness testified that he worked on the 80-acre tract; that he worked with a Mr. Bonham and that a representative of plaintiff company was keeping track of the wheat harvested on one of the 80-acre tracts; that the witness was sewing sacks and that he knew two bales of 500 sacks each or more were used on that 80 acres in 1940.

Mrs. Shields testified that as the wheat was hauled to the Warner Seed Company she kept the records and filed them; that the receipts marked Exhibit B were such receipts. These receipts on their face show that there were 1,010 sacks of wheat delivered.

Mr. Warner, of the seed company, testified that according to his records he received only 500 sacks of wheat from the

defendant in 1940, weighing 510.80 pounds; that a considerable amount of that wheat had to be "cleaned" or "screened"; that he paid the plaintiff, under the assignment, after deducting his charges, $200.77; and that was all he owed the defendants.

Bonham, now deceased, testified that in 1940 he was running the harvester for Shields; that every day during that time a representative of the Production Credit Company was there and keeping track of the harvest as it progressed; and that approximately between 1,000 and 1,100 sacks were harvested.

It now appears that there is considerable conflict in the evidence as to the exact amount of wheat delivered to the Warner Seed Company by the defendants. The evidence might indicate that defendants were not credited with the full amount delivered, and that the amounts turned over to plaintiff were not the *actual proceeds* of defendants' crop. This was a factual question which the jury was entitled to determine. The order directing a verdict in favor of plaintiff, in view of this conflict in the evidence, cannot be sustained. Under the circumstances it becomes unnecessary to determine the remaining questions raised on this appeal. They may not present themselves after another trial of the issues here discussed.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.