[Civ. No. 3937.   Fourth Dist.   Aug. 4, 1949.]

JULIAN POHL, Appellant, v. FRED MERCURIO et al.,
Respondents.

J. A. Donelley and Richard P. MacNulty for Appellant.

Atherton & Atherton for Respondents.

MUSSELL, J.—This is an action for real estate broker's commission and for reasonable value of services rendered.

Defendants, as partners, owned certain real property in the city of San Diego, upon which a business was conducted known as Van's Market. On March 13, 1946, defendants by letter gave plaintiff, a real estate broker, an exclusive listing to sell the property for a net price of $50,000. It was provided in the letter that the listing would be automatically cancelled unless plaintiff had a ''deal in Escrow or one pending satisfactory to the writer as of March 28th, 1946.'' There was a further condition that there be no advertising of any nature as to the sale of the property. On April 11, 1946, defendants wrote to plaintiff confirming a previous telephone conversation wherein it was agreed that plaintiff would no longer have an exclusive listing on Van's Market. At the time of the listing, and the letter of April 11th, the premises were occupied by Van's Market, a corporation, under a lease at a monthly rental of $185, terminating on May 14, 1947. No mention was made in the listing of the lease but its existence was known to plaintiff and he accepted the listing with the understanding that he was not to contact the tenant. Sometime in February, 1946, defendants had commenced negotiations with the tenant for a new lease and that fact was known to plaintiff, but he took no part in the negotiations and no agreement as to a new lease was entered into during the time of the listing. Plaintiff contacted Dr. E. P. Chartres-Martin as a prospective buyer and the doctor was interested in purchasing the property, provided that a new lease be secured which was satisfactory to him. On May 1,

1946, the doctor signed a written offer of purchase, ''Subject to existing lease expiring in May, 1947, and also to be subject to a new lease to be executed and approved by the buyer herein, thru this escrow or above deposit ($2500.00) to be returned.'' Defendants then secured a tentative lease from Van's Market for a term of 10 years, providing for a monthly minimum rental of $400, or a sum equal to 2 per cent of all sales made from the premises. The document also contained the following provisions in article 3. ''IMPROVEMENTS:

''The parties hereto agree that the present building is too small for the Lessee's needs, and it is understood that as soon as it is possible to obtain materials and priorities, the Lessor is going to enlarge the building and make such other improvements as are agreed upon between the Lessee and the Lessor.'' The tentative lease was submitted to Dr. Chartres-Martin but he would not accept it and insisted that an amendment be added to Article 3, as follows: ''And it is further agreed that when said building is enlarged and such other improvements are made as are agreed upon, an adjustment in the rental shall then be made, so as to compensate the Lessor for his increased investment in the property.'' The doctor also insisted on the insertion of this amendment and condition in the escrow instructions and in the addition thereto of the following language: ''It is understood and agreed by all parties that this escrow and the closing thereof is contingent upon and subject to the following: That a lease of the above described property for a period of six years shall be executed by the present tenant of said property wherein the above purchaser shall be the Lessor. Said lease and all the terms and conditions thereof shall be approved in writing by the said purchaser before the closing of this escrow. Seller to grant a permanent easement over adjoining 15 feet directly south of this property as a driveway in exchange for a similar 10 foot easement over the rear of this property.''

The tentative lease, as amended by Dr. Chartres-Martin, was presented to Van's Market but the corporation refused to enter into such a lease providing for additional rent in return for improvements, and no lease was ever executed satisfactory to Dr. Chartres-Martin. After ascertaining that the tentative lease as amended would not be executed by Van's Market and that the doctor insisted on the provisions contained in the amendment and in the escrow instructions, defendants notified plaintiff that there could be no further negotiations as to the sale of the property and that it was

being withdrawn from the market. About a week later defendants executed a lease with Van's Market without the amendments and alterations insisted upon by Dr. Chartres-Martin and the ownership of the property was retained by defendants.

Trial of the action was had before a jury and, after plaintiff had presented his evidence and had rested his case, the trial court granted a motion for a directed verdict in favor of defendants. The verdict was returned as directed and this appeal is taken from the judgment on the ground that the court erred in taking the case from the jury and directing a verdict.

The settled rule is that a court may direct a verdict only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Burgess* v. *Cahill,* 26 Cal.2d 320, 321 [158 P.2d 393, 159 A.L.R. 1304]; *Imperial-Yuma etc. Credit Assn* v. *Shields,* 88 Cal.App.2d 328, 330 [198 P.2d 951].)

However, when there is no substantial evidence to support a verdict in favor of plaintiff, after indulging in the inferences in his favor, and disregarding conflicting evidence, it is then the trial court's plain duty to grant a motion for an instructed verdict. (*Carpenter* v. *Los Angeles Gas & Electric Corp.,* 41 Cal.App.2d 369, 374 [106 P.2d 916].)

Plaintiff's right to recover a commission in the instant case is dependent upon proof that he found a purchaser who was ready, able and willing to purchase the property listed with him, upon the terms and conditions set forth by the owners at or during the time of the listing. (4 Cal.Jur. § 53, p. 626.) As was said in *Naylor* v. *Ashton,* 20 Cal.App. 544, 546 [130 P. 181]: "The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until this is done his right to commission does not accrue." (*Colton* v. *O'Brien,* 217 Cal. 551, 553 [20 P.2d 43]; *Clements* v. *Rankin,* 83 Cal.App.2d 779, 785 [189 P.2d 725]; *Fitzpatrick* v. *Underwood,* 17 Cal.2d 722, 731 [112 P.2d 3].)

The evidence before us shows conclusively that the terms of a sale were never agreed upon by plaintiff's prospective purchaser and the defendants. The purchaser was financially able to buy the property but it is undisputed that

he would only purchase it upon a new lease being executed by Van's Market providing for additional rent in the event the buyer was required to make any improvements as called for in the tentative new lease. The prospective buyer at all times refused to purchase the property subject to the original lease, and also refused to buy subject to the only lease agreeable to the tenant in possession of the property. Plaintiff's client further demanded certain easements and rights of way which were not in the original terms of the listing, and presented his own terms of payment, not in accordance with those contained in the listings. Under such circumstances plaintiff was not entitled to a commission.

Plaintiff argues that defendants acted in bad faith in terminating his authority to sell the property; that plaintiff was entitled to his commission since he was prevented from making the sale by the arbitrary action of the owners when a sale was in progress and there was a strong likelihood of its being successful. These contentions are without merit. Defendants had authority to revoke plaintiff's authority at any time before plaintiff had completed performance of his contract. (*Elevator Operators etc. Union* v. *Newman*, 30 Cal.2d 799, 807 [186 P.2d 1]; *Heffernan* v. *Merrill Estate Co.*, 77 Cal.App.2d 106, 113 [174 P.2d 710].)

There is no substantial evidence in the record of bad faith in the termination of plaintiff's authority. The tenant, Van's Market, refused to execute any lease other than the tentative one submitted to plaintiff's client, and he refused to accept it. The parties could not and did not agree. The evidence shows that an effort was made by defendants to get the tenant to accept the amended lease as proposed by Dr. Chartres-Martin but he as well as the tenant took a definite stand and no sale could be or was completed. There was no evidence of any likelihood of the consummation of an agreement of sale at the time of the terminations of plaintiff's authority. We conclude that the action of the trial court in granting the motion for a directed verdict was proper under the evidence presented.

Judgment and order affirmed.

Barnard, P. J., concurred.