[Civ. No. 3995. Fourth Dist. Sept. 21, 1950.]

IMPERIAL-YUMA PRODUCTION CREDIT ASSOCIA-TION (a Corporation), etc., Respondent, v. E. S. SHIELDS et al., Appellants.

Leslie L. Burr and A. C. Finney for Appellants.

George R. Kirk for Respondent.

GRIFFIN, Acting P. J.—This is the third appeal in the instant action. For a more complete statement of the facts see *Imperial-Yuma Production Credit Association, a Corporation, v. Shields*, 88 Cal.App.2d 328 [198 P.2d 951]; and 74 Cal. App.2d 932 [169 P.2d 671]. On the third trial, settlement was made by a stipulation that defendants were entitled to a credit of $1,685.97 by reason of wheat delivered by defendants but for which they were not credited on the note. The issues

were then narrowed down to the question of whether defendants were entitled to an offset or counterclaim against the balance of $1,508.93 due on the note set forth in plaintiff's cause of action. The claim was for damages alleged to have been suffered by defendants as a result of the destruction of a 120-acre grain crop. The cross-complaint alleges, in this respect, that at plaintiff's request, defendants planted a crop of barley, with the understanding that at the proper stage of growth it was to be pastured; that at that stage defendants informed plaintiff and that plaintiff failed to so pasture the crop and that thereafter, when it became too late to so pasture it, defendants informed plaintiff that they did not desire to pasture it at all; that nevertheless, during defendants' absence, plaintiff pastured the 120 acres and the crop was consumed by plaintiff's livestock; that for such pasturing plaintiff credited defendants with $298.86 and no more; that had the barley crop not been pastured at that time and allowed to produce a crop of grain, the reasonable net value would have been $3,500; and that by reason thereof defendants were injured in the sum of $3,201.14, after allowing credit for $298.86 already paid. Plaintiff denied that it instigated or requested the planting of the crop or that plaintiff had anything to do with the planting or pasturing of it, and denied that defendants were entitled to any credit under the alleged claim.

The issues are presented on an agreed statement of facts and the testimony of defendant E. S. Shields. In the agreed statement of facts it is stated that under the pleadings and evidence there remained but one item before the court, i.e., that of the alleged destruction of the crop and the liability of plaintiff to defendants for the damages suffered, if any. The renewal note, the loan acceptance, the crop mortgage, and the statement of account showing payments credited, were received in evidence without objection. The court sustained objections to certain questions propounded to the witness Shields which are the subject of contention on this appeal.

Shields testified that he owned 120 acres of land and on February 26, 1940, he and his wife signed a crop and chattel mortgage covering crops on this and other acreage for the years 1940, 1941 and 1942, in addition to considerable farm machinery, tools, etc., as security for the payment of the renewal note sued upon. This mortgage was received in evidence.

Apparently defendant Shields planted the acreage to grain and subsequently leased it for pasturage purposes to the San Pasqual Land & Cattle Company, which operated through one

A. Kalin. According to the assignment in evidence plaintiff association, on October 3, 1940, secured from Shields an assignment of all proceeds from the rental of pasturage and sale of crops grown on the acreage for the calendar year 1940-1941. This agreement was subsequently accepted by San Pasqual Land & Cattle Company. According to a receipt in evidence, on March 14, 1941, plaintiff gave defendant credit for $298.86 received from the cattle company for pasturage on 80 acres of land for the month of January. From the exhibits in evidence it does not appear that plaintiff association had any part in the transaction between defendants and the cattle company or had any control over the time or manner in which the acreage was to be pastured. According to a letter accompanying the assignment sent to defendants for signature, plaintiff asked that defendant sign and return it and asked that defendants inform plaintiff "the name of the purchaser of your pasture. We understand it is Mr. Al Kalin." The only evidence offered by defendants on that subject was the testimony of Mr. Shields. He stated that he was farming about 600 acres of land in 1940; that he executed the note and assignment in evidence; that he had some conversation with plaintiff relative to the crops that were to be planted and that it was to receive the returns from them during the year 1940. He then testified that in September, 1940, a field worker for plaintiff came to his ranch and made a list of all equipment available, and told defendants that unless the note was paid by them the company was going to sell all the equipment; that the field worker suggested defendants see Mr. Kalin, who was one of the board of directors of the Production Credit Association, and that he might do something for them; that he went to see Mr. Kalin, who was a regional director in the Westmorland district of the Production Credit Association. As to what was said at that time, the court sustained an objection on the ground of hearsay. The witness then testified that about December 1, 1940, he called the "Production Credit" and informed Mr. Hixon that the grain field was ready for pasture and should be pastured right away; that he did not recall what the reply was; that about January 1, 1941, he called again and told him that the barley had gone too far now to be pastured; that while this defendant was out of the city he discovered the crop had been pastured around February 1, 1941; that he went to plaintiff's office and had a conversation with Mr. Hixon. The court then

sustained an objection to a relation of that conversation and defendant Shields made an offer of proof which recites that Shields said to Hixon: "I see you have permitted Mr. Kalin to pasture off my barley crop"; that Mr. Hixon replied: "We turned that whole matter over to Mr. Kalin and you will have to see him. I have nothing further to say to you." The court then refused to hear evidence as to any claimed damage because of the defendants' failure to establish any basis for plaintiff's liability for such claimed damage, whereupon defendants rested. The court directed a verdict in favor of plaintiff for $1,508.93, being the balance due on the note and directed that it find against defendants on their cross-complaint. Such a verdict resulted. Judgment was entered accordingly. Defendants appealed and claim that the court erred in its ruling and in granting plaintiff's motion for a directed verdict.

It is argued by defendants that the evidence establishes that Kalin was at all times herein mentioned, in fact, the agent of plaintiff and that when it accepted the benefits, namely, $298.86 from the pasturage, there was a confirmation of the act of Kalin under sections 1589 and 2310 of the Civil Code and the holding in *Phillips* v. *Sanger Lumber Co.*, 130 Cal. 431, 434 [62 P. 749].

Plaintiff's contention is that there was no evidence that Kalin was agent for plaintiff in making the agreement with defendants for pasturing the acreage or in accepting or making payments to it, or that plaintiff ever directed Kalin to perform the obligation at all or in any particular manner; that accordingly, defendants showed no liability on the part of plaintiff for the alleged loss of the barley crop.

■ The instruments in evidence, on their face, clearly support the trial court's ruling that there was a failure of proof on the part of defendants to show liability on the part of plaintiff association. There is nothing contained therein indicating that Kalin was plaintiff's agent in any of the transactions or was ever authorized by the corporation to pasture cattle on defendants' land in its behalf or that plaintiff ever directed Kalin to pasture it at the time indicated. ■ The only possible evidence, which bears on this subject, is the testimony of defendant Mr. Shields. He stated that a field worker *suggested* to him that he see Mr. Kalin, who undeniably was the authorized agent of the San Pasqual Land & Cattle Company and who, as he stated, was also one of the board of directors of plaintiff association; that he told him "he might do something for him." This statement, if so made, did not

prove that Kalin was plaintiff's agent or that Kalin was authorized to act for the association in any manner. Shields, subsequently, contacted Kalin, apparently at some other place than plaintiff's place of business, and made some arrangements with him about pasturing the cattle on defendants' premises. We are unable to determine whether the sustaining of the objection to the relation of that conversation was proper or improper, because there was no offer of proof or disclosure as to the nature of the conversation. If Kalin stated that he was dealing on behalf of the San Pasqual Land & Cattle Company in entering into the agreement for leasing the property for grazing purposes no agency in relation to plaintiff association could be established by such conversation. On the other hand, if Kalin made some declaration indicating that he might be an agent for or a director of plaintiff association, such declaration of the agent would not create ostensible authority and such declaration, made out of the presence and without the knowledge of the principal, was incompetent to establish either the fact of agency or the extent of the agent's authority. (*Union Construction Co.* v. *Western Union Telegraph Co.*, 163 Cal. 298 [125 P. 242] ; *Curtin* v. *Ingle*, 137 Cal. 95 [69 P. 836, 1013] ; *Lambert* v. *Gerner*, 142 Cal. 399 [76 P. 53] ; 1 Cal.Jur. p. 698, § 8; 1 Cal.Jur. p. 741, § 41.) In the absence of an offer of proof it cannot be said that the trial court erred in its ruling in this respect.

 The only other conversation which defendants rely upon to prove such agency and authority is the purported conversation with Mr. Hixon, after the discovery of the claimed damage. Even if the evidence had been admitted under the offer of proof, the evidence of agency and authority of Kalin to act for the association in pasturing the cattle at the time indicated falls far short of establishing that fact. In effect it was but an accusation that plaintiff association did "permit" Kalin to pasture off defendants' barley crop. If Kalin was dealing through the San Pasqual Land & Cattle Company, as indicated, he would need no permission of plaintiff to the pasturing of the acreage and plaintiff would have no authority to tell him when he could or should pasture it. In effect, the reply of Mr. Hixon tends to negative the accusation and clearly indicates that Kalin was not acting for the plaintiff association. We see no prejudicial error in sustaining the objection. Defendants failed to, and declined to produce other proof on this subject.

The remaining argument that the receipt of $298.86 from the San Pasqual Land & Cattle Company constituted a ratification or confirmation of the act of Kalin, under the law of agency, is without merit. The assignment of crop proceeds, duly executed by defendants, provides for such payments to be made to plaintiff association. In the absence of a contrary showing, the receipt of such funds by it could not be construed as a ratification of Kalin's act as agent.

Under the evidence produced or proffered, the ruling of the trial court in sustaining objections to the questions propounded and the granting of the motion for a directed verdict must be sustained.

Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied October 9, 1950, and appellants' petition for a hearing by the Supreme Court was denied November 20, 1950.