[Crim. No. 1686. In Bank.—May 27, 1912.]

## In the Matter of the Application of F. A. MILLER for a Writ of Habeas Corpus.

EMPLOYMENT OF WOMEN—EIGHT HOURS LAW—ACT OF MARCH 22, 1911, IS CONSTITUTIONAL.—The act of March 22, 1911, (Stats. 1911, p. 437), forbidding the employment of women for more than eight hours a day in certain places, is constitutional, so far as it applies to women employed in hotels.

ID.—CONSTITUTIONAL LAW—PROVISIONS OF STATE CONSTITUTION NOT VIOLATED.—The act is not in violation either of section 18 of article XX of the state constitution, providing that "no person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation or profession"; or of section 1 of article

I, declaring that all persons have an inalienable right to enjoy life and liberty and to acquire and possess property; or of section 11 of article I, requiring that all laws of a general nature shall have a uniform operation; or of section 21 of article I, prohibiting the granting of privileges or immunities to any citizens, or class of citizens, which, upon the same terms shall not be granted to all citizens; or of section 25 of article IV, prohibiting the passing of special laws, granting to any individual any special or exclusive right, privilege, or immunity.

ID.—DISCRIMINATIONS ON ACCOUNT OF SEX—VALID POLICE REGULATIONS —HOURS OF LABOR.—Section 18 of article XX of the constitution, prohibiting any such discrimination based solely on distinctions of sex, like other constitutional guarantees, is subject to such reasonable regulations as may be imposed in the exercise of police powers. It does not forbid such reasonable restrictions upon the hours of labor of women as may be necessary for the protection and preservation of the public health.

ID.—RIGHT OF CONTRACT SUBJECT TO LIMITATIONS UNDER POLICE POWER. —Although the act provides a punishment only for the employer, its prohibition applies to both employer and employee, and it clearly restricts the liberty of both, in the specified establishments, to freely contract with each other as to the length of a day's service or to perform such contract when made.

ID.—PRESERVATION OF PUBLIC HEALTH, SAFETY, AND MORALS—LEGISLATIVE DISCRETION.—The right of an individual to so contract is in itself subject to certain limitations which the state may lawfully impose in the exercise of its police powers, for the purpose of preserving public health, safety, or morals, and a large discretion is vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests.

ID.—LIMITATIONS ON POLICE POWERS — REASONABLE ASSUMPTION OF INJURY TO PUBLIC.—The police powers of the legislature in this connection are not absolute or unlimited, and the personal right to contract cannot be taken away or impaired at its mere will, nor at all, unless the public welfare demands it. So far as the effect on himself alone is concerned, each person has the absolute right to judge for himself whether the hard labor which he voluntarily performs is for his best interest or not. The legislature cannot judge for persons in this respect and interfere solely to prevent them from injuring themselves by excessive labor. The injury must be of such character and extent and to such a number of persons that it may be reasonably supposed that it will cause injury to others, that is, to the community in general, or, as it is expressed, to the public health and general welfare.

ID.—LEGISLATIVE DETERMINATION SUBJECT TO REVIEW BY COURTS.—The means adopted to produce the public benefit intended, or to prevent the public injury, must be reasonably necessary to accomplish that

purpose and not unduly oppressive upon individuals. The determination of the legislature as to these matters is not conclusive, but is subject to the supervision of the courts, and if the above qualities are wanting, a law arbitrarily interfering with the right of contract, or imposing restrictions upon lawful occupations, will be held void.

ID.—LAWS RESTRICTING HOURS OF WOMEN'S LABOR—PHYSICAL REASONS JUSTIFYING.—The application of short hour laws exclusively to women is justified on the ground that they are less robust in physical organization and structure than men, that they have the burden of child-bearing, and, consequently, that the health and strength of posterity and of the public in general is presumed to be enhanced by preserving and protecting women from exertion which men might bear without detriment to the general welfare.

ID.—LAWS PRESUMED CONSTITUTIONAL—PRESUMPTION AS TO POLICE REGULATION.—The courts must always assume that the legislature, in enacting laws, intended to act within its lawful powers and not to violate the restrictions placed upon it by the constitution. Consequently, this statute must be taken as intended for a police regulation to preserve, protect, or promote the general health and welfare.

ID.—NECESSITY OF LAW—FACTS JUSTIFYING CLASSIFICATION—REVIEW BY COURTS.—The determination by the legislature that facts exist which make such a law necessary, and also with regard to the facts upon which a lawful classification and discrimination depend, must not be set aside or disregarded by the courts, unless the legislative decision is clearly and palpably wrong and the error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice.

ID.—REASONABLE LIMITATIONS OF HOURS OF LABOR.—If reasonable men, upon a consideration of the facts, might rationally conclude that the restrictions would promote or preserve, in some appreciable degree, the public health or general welfare, the law must be deemed a proper exercise of the police power, although other reasonable men might take the opposite view.

ID.—LIMITATION OF HOURS OF LABOR OF FEMALES EMPLOYED IN HOTELS.—In view of the reasons which justify a restriction upon the hours of employment or labor of women, as distinguished from men, and the differences of opinion, among those familiar with the subject, as to the injurious effect of labor for more than eight hours daily, the court cannot hold, that a limitation to eight hours a day of the time of employment in many of the occupations mentioned in the act, including the employment in hotels, is unreasonable as a health regulation.

ID.—SPECIAL LEGISLATION—EXEMPTION OF OTHER SIMILAR OCCUPATIONS.—The law is not rendered special legislation because there may be no reasons for making the restrictions as to the particular employments mentioned in the act which do not apply with equal force to other similar occupations. If there are good grounds for the classi-

fication made by the act, it is not void because it does not include every other class needing similar protection or regulation.

ID.—WHEN LAWS ARE GENERAL AND UNIFORM IN OPERATION.—A law is general and uniform in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided such class is made upon some natural, intrinsic, or constitutional distinction between the persons composing it and others not embraced in it. It is not general or uniform, and it makes an improper discrimination, if it confers particular privileges or imposes peculiar restrictions or disabilities upon a class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to the privileges granted or burdens imposed, and between whom and the persons not so favored or burdened no reasonable distinction or substantial difference can be found justifying the inclusion of one and the exclusion of the other from such privileges or burdens. The difference on which the classification is based must be such as, in some reasonable degree, will account for or justify the peculiar legislation.

ID.—EXEMPTION OF WOMEN EMPLOYED IN LODGING AND BOARDING HOUSES—JUSTIFICATION OF CLASSIFICATION.—The law is not rendered special nor discriminatory because it applies to women employed in hotels and does not apply to women employed in lodging houses and boarding houses. In support of such classification, it will be assumed that the legislature determined that the conditions surrounding the hotel employees rendered their work more arduous, and materially different from the work of those similarly employed in lodging or boarding houses.

ID.—EXEMPTION OF PERSONS ENGAGED IN HARVESTING, ETC., PERISHABLE PRODUCTS.—The exemption in the act of persons employed in harvesting, curing, canning, or drying perishable fruits or vegetables from the operation of the law, is not an improper discrimination. The classification is justified by the facts that such occupations are engaged in only for a short period of each year, and by the greater necessity, from the standpoint of the general welfare, for facility in obtaining employees to do the work than obtains in ordinary employments, in order to avoid loss ensuing from the perishable nature of the products to be preserved.

ID.—TITLE OF ACT—ONLY ONE SUBJECT EMBRACED IN.—The title of the act embraces but one general subject—the regulation of female employment. The subdivision of this subject by the particular details stated in the title does not make it embrace two subjects.

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of Riverside County.

The title of the act of March 22, 1911 (Stats. 1911, p. 437) is as follows: "An act limiting the hours of labor of females employed in any manufacturing, mechanical or mercantile

establishment, laundry, hotel, or restaurant, or telegraph or
telephone establishment or office, or by any express or trans-
portation company; compelling each employer in any manu-
facturing, mechanical, or mercantile establishment, laundry,
hotel or restaurant, or other establishment employing any
female to provide suitable seats for all female employees
and to permit them to use such seats when they are not
engaged in the active duties of their employment; and pro-
viding a penalty for failure, neglect or refusal of the employer
to comply with the provisions of this act, and for permitting
or suffering any overseer, superintendent, foreman or other
agent of any such employer to violate the provisions of this
act." The further facts are stated in the opinion of the court.

Flint, Gray & Barker, and Purington & Adair, for
Petitioner.

Lyman Evans, District Attorney, and William Denman,
G. S. Arnold, Thomas F. Griffin and Leon Yanchwich, *Amici
Curiæ*, for Respondent.

· SHAW, J.—The petitioner applies for release from custody
on a charge of violating the provisions of the act of March 22,
1911, forbidding the employment of women in certain estab-
lishments for more than eight hours in one day, or more than
forty-eight hours in one week. (Stats. 1911, p. 437.) The
specific charge is that on June 12, 1911, he employed and
thereupon required Emma Hunt, a female, to work during
that day for nine hours in the Glenwood Hotel, as an em-
ployee therein. His contention is that the act is unconstitu-
tional and void.

Three grounds are urged in support of this claim: 1. That
the restrictions imposed by the statute upon the freedom of
contract are in violation of section 1 of article I, and section
18 of article XX of the constitution, and that it is conse-
quently invalid; 2. That the act is special, that it is not
uniform in its operation, and that it makes arbitrary dis-
criminations between persons and classes of persons similarly
situated contrary to the limitations of sections 11 and 21 of
article I, and section 25 of article IV of the constitution;
3. That it embraces two distinct subjects, contrary to section
24 of article IV of the constitution.

The material parts of the statute are as follows:

"Section 1. No female shall be employed in any manufacturing, mechanical or mercantile establishment, laundry, hotel, or restaurant, or telegraph or telephone establishment or office, or by any express or transportation company in this state more than eight hours during any one day or more than forty-eight hours in one week. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than eight hours during the twenty-four hours of one day, or forty-eight hours during any one week; *provided, however,* that the provisions of this section in relation to the hours of employment shall not apply to nor affect the harvesting, curing, canning or drying of any variety of perishable fruit or vegetable.

"Section 2. Every employer in any manufacturing, mechanical or mercantile establishment, laundry, hotel, or restaurant, or other establishment employing any female, shall provide suitable seats for all female employees, and shall permit them to use such seats when they are not engaged in the active duties of their employment."

Section 3 declares it a misdemeanor, punishable by fine or imprisonment, or both, for any employer to require any female to work in any of the places mentioned in section 1 more than the number of hours allowed by the act, during any one day of twenty-four hours.

1. Section 18 of article XX of the constitution provides that "no person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation, or profession." This section prohibits any discrimination of this kind based solely on distinctions of sex. But. as in case of the other constitutional guaranties, this provision is subject to such reasonable regulations as may be imposed in the exercise of police powers. It does not forbid such reasonable restrictions upon the hours of labor of women as may be necessary for the protection and preservation of the public health. (*Ex parte Hayes,* 98 Cal. 556, [20 L. R. A. 701, 33 Pac. 337]; *Foster* v. *Commissioners,* 102 Cal. 490, [41 Am. St. Rep. 194, 37 Pac. 763].)

2. Recognizing the importance of personal liberty, our state constitution at the outset declares that all persons have an inalienable right to enjoy life and liberty and to acquir-, and

possess property.  (Art. I, sec. 1.)  This, necessarily, includes liberty to work for the purpose of acquiring property, or to accomplish any desired lawful object, and liberty to continue that work each day a sufficient time to gain more than is required for the daily needs.  Hence comes the right to make contracts to serve and contracts to employ such service.  There can be no contract by the employee to serve without a corresponding contract by the employer to hire and receive such service.  Therefore, although the act in question provides a punishment only for the employer, its prohibition applies to both and it clearly restricts the liberty of both the employer and the employed, in the specified establishments, to freely contract with each other as to the length of a day's service or to perform such contracts, when made.  Consequently, it does, to that extent, take away the liberty guaranteed by this provision of the constitution.

Although this guaranty of the constitution is apparently absolute and unqualified, yet it is well established that it is subject to the exercise, by the legislature, of what are known as the police powers of the state.

Says the supreme court of the United States in *Holden* v. *Hardy,* 169 U. S. 391, [42 L. Ed. 780, 18 Sup. Ct. Rep. 388] : "This right of contract, however, is in itself subject to certain limitations which the state may lawfully impose in the exercise of its police powers," a power which "may lawfully be resorted to for the purpose of preserving public health, safety, or morals, and a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." (See, to the same effect, *Ex parte Whitwell,* 98 Cal. 78, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870] ; *Ex parte Tuttle,* 91 Cal. 591, [27 Pac. 933] ; *In re Yick Wo,* 68 Cal. 297, [58 Am. Rep. 12, 9 Pac. 139] ; *Lawton* v. *Steele,* 152 U. S. 136, [38 L. Ed. 385, 14 Sup. Ct. Rep. 499].)

Because of the great value to mankind and the consequent paramount importance of the preservation of individual liberty, it is universally admitted and held that the police powers of the legislature are not absolute or unlimited.  These personal rights cannot be taken away or impaired at the mere will of the legislature, nor at all, unless public welfare de-

mands it. So far as the effect on himself alone is concerned, each person has the absolute right to judge for himself whether the hard labor which he voluntarily performs is for his best interest or not. The legislature cannot judge for persons in this respect and interfere solely to prevent them from injuring themselves by excessive labor. The injury must be of such character and extent and to such a number of persons that it may be reasonably supposed that it will cause injury to others, that is, to the community in general, or, as it is expressed, to the public health and general welfare. (*Lawton v. Steele*, 152 U. S. 136, [38 L. Ed. 385, 14 Sup. Ct. Rep. 499].)

The means adopted to produce the public benefit intended, or to prevent the public injury, must be reasonably necessary to accomplish that purpose and not unduly oppressive upon individuals. The determination of the legislature as to these matters is not conclusive, but is subject to the supervision of the courts, and if the above qualities are wanting, a law arbitrarily interfering with the right of contract, or imposing restrictions upon lawful occupations, will be held void. (*Ex parte Whitwell*, 98 Cal. 78, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870] ; *Lawton v. Steele*, 152 U. S. 136, [38 L. Ed. 385, 14 Sup. Ct. Rep. 499] ; *Holden v. Hardy*, 169 U. S. 391, [42 L. Ed. 780, 18 Sup. Ct. Rep. 388] ; Tiedman on Police Powers, p. 17; Freund on Police Powers, sec. 63; 22 Am. & Eng. Ency. of Law, 936.) In the language of Justice Harlan in *Mugler v. Kansas*, 123 U. S. 161, [31 L. Ed. 205, 8 Sup. Ct. Rep. 297] : "If, therefore, a statute purporting to have been enacted to preserve public health, the public morals or the public safety, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the court so to adjudge, and thereby give effect to the constitution." If this were not so, the constitutional guaranties of the personal right to liberty and property would be wholly subject to the will of the majority acting through the legislature.

It is settled, however, that some occupations may have a tendency to injure the health of those engaged therein, that this injury may be so general or extensive as to affect the public health and general welfare, and that in such cases the legislature may, in the exercise of the police power of the

state, enact laws limiting the time of labor therein to eight hours a day. Thus, laws have been upheld restricting to eight hours the daily labor of persons working in underground mines, or in smelters and quartz mills, and the legislative judgment on the subject of the extent and effect of the injury was considered sufficiently supported to be beyond judicial interference. (*Holden* v. *Hardy,* 169 U. S. 391, [42 L. Ed. 780, 18 Sup. Ct. Rep. 388]; *In re Martin,* 157 Cal. 51, [26 L. R. A. (N. S.) 242, 106 Pac. 235]; *In re Martin,* 157 Cal. 60, [106 Pac. 239].)

So, also, it has been recognized that some occupations followed by women, though less arduous than those generally followed by men, may have such a tendency to injure their health, if unduly prolonged, that laws may be enacted restricting their time of labor therein to ten hours a day. The application of these laws exclusively to women is justified on the ground that they are less robust in physical organization and structure than men, that they have the burden of child-bearing, and, consequently, that the health and strength of posterity and of the public in general is presumed to be enhanced by preserving and protecting women from exertion which men might bear without detriment to the general welfare. (See *Commonwealth* v. *Hamilton Mfg. Co.,* 120 Mass. 383; *Wenham* v. *State,* 65 Neb. 394, [58 L. R. A. 825, 91 N. W. 421]; *State* v. *Buchanan,* 29 Wash. 602, [92 Am. St. Rep. 930, 59 L. R. A. 342, 70 Pac. 52]; *State* v. *Muller,* 48 Or. 252, [120 Am. St. Rep. 805, 11 Ann. Cas. 88, 85 Pac. 855]; *Muller* v. *Oregon,* 208 U. S. 412, [13 Ann. Cas. 957, 52 L. Ed. 551, 28 Sup. Ct. Rep. 324]; *Withey* v. *Bloem,* 163 Mich. 419, [35 L. R. A. (N. S.) 628, 128 N. W. 913]; *Ritchie* v. *Wayman,* 244 Ill. 509, [27 L. R. A. (N. S.) 994, 91 N. E. 695]; *State* v. *Somerville,* 67 Wash. 638, [122 Pac. 324].)

Counsel for the respondent do not advance the proposition that a general restriction of all women to eight hours a day for all work would be a proper police regulation. This precise question is not involved. The act does not limit the time of occupation or exertion by females. It limits only the time for which a female may "be employed," that is to say, engaged in service for another. The time of such service does not usually measure the whole time of daily toil, labor or exertion.

The courts must always assume that the legislature, in enact-

ing laws, intended to act within its lawful powers and not to violate the restrictions placed upon it by the constitution. We must take this statute as a law intended for a police regulation to preserve, protect, or promote the general health and welfare. As has been already stated, a large discretion is vested in the legislature to determine what measures are necessary for that purpose. Upon this question of fact, as also with regard to the facts upon which a lawful classification and discrimination depend, to be hereinafter discussed, the rule is well settled that the legislative determination that the facts exist which make the law necessary, must not be set aside or disregarded by the courts, unless the legislative decision is clearly and palpably wrong and the error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice. (*Stockton* v. *Stockton,* 41 Cal. 159; *Ex parte Tuttle,* 91 Cal. 591, [27 Pac. 933]; *In re Spencer,* 149 Cal. 400, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]; *In re King,* 157 Cal. 164, [106 Pac. 578].) The power of the court to declare a statute unconstitutional is "conceded to be always one of the utmost delicacy in its exercise, and never to be exerted except when the conflict between the statute and the constitution is palpable and incapable of reconciliation." (*Stockton* v. *Stockton,* 41 Cal. 159.) If reasonable men, upon a consideration of the facts might rationally reach the conclusion that the enforcement of the statute would tend to promote or preserve, in some appreciable degree, the public health or general welfare, the law must be accredited as a proper exercise of the police power, although other reasonable persons might take a different view.

The reasons which justify a restriction upon the hours of employment or labor of women, as distinguished from men, are fully stated in the cases heretofore cited upon that subject and need not be further considered here. Restrictions to ten hours a day have always been upheld. In Illinois a restriction to eight hours in factories was declared invalid. (*Ritchie* v. *People,* 155 Ill. 98, [46 Am. St. Rep. 315, 29 L. R. A. 79, 40 N. E. 454].) In Washington, a similar law was held valid. (*State* v. *Somerville,* 67 Wash. 638, [122 Pac. 324].) In the latter case the woman was employed in a factory for the manufacture of paper boxes.

The question of the effect of the various occupations in which women engage, upon their health, is one upon which medical men differ and with respect to which the prevailing opinion changes from time to time. It has not been, and probably never will be, a settled question, either with respect to the deleterious effects of particular occupations, or the hours of labor which measure the limit of safety in each. Women who work for others usually have household or other domestic duties to perform which oblige them to continue at work each day for a much longer period than their time of service. Even those who live at their places of work generally have to make and mend their clothing and do other things for their personal welfare, in addition to the work done for their employers. In view of these circumstances affecting the generality of employed women, it could scarcely be claimed that a limitation to eight hours a day of the time of employment, in many of the occupations mentioned in the act, is unreasonable as a health regulation. The work in hotels may not be as severe as that in some of the other places covered by the law, but considering the delicate frame of women as compared with men, we cannot perceive that the difference is so radical as to make it unreasonable to include employees in hotels among those protected by the law. Doubtless there is a limit below which the legislature cannot go. But we cannot say that eight hours of employment in work of this character in addition to the labor necessary to be done before and afterward by the employee is unreasonably low and beyond the legislative discretion, or that, in the present condition of common knowledge on the subject, the limitation upon the time of employment of women in hotels is so manifestly unreasonable and unnecessary for the promotion and preservation of the health and welfare of the human race that the courts can declare that the legislature had no rational ground for imposing it as a police regulation for that purpose. The responsibility, if the law is unwise, is with the legislature.

3. The next objection is that the act is special because there are no reasons for making the restriction as to the particular employments mentioned in the act which do not apply with equal force to other similar occupations. There may be, and probably are, other occupations followed by women which are equally injurious to their health, and which should also be

regulated. But if this be true it does not make the law invalid. If there are good grounds for the classification made by the act, it is not void because it does not include every other class needing similar protection or regulation. "The law is not rendered special by the mere fact that it does not cover every subject which the legislature might conceivably have included in it." (*Ex parte Martin,* 157 Cal. 57, [26 L. R. A. (N. S.) 242, 106 Pac. 237].)

The general rules governing this subject are well settled by our decisions. They may be stated as follows: A law is general and uniform in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided such class is made upon some natural, intrinsic, or constitutional distinction between the persons composing it and others not embraced in it. It is not general or uniform and it makes an improper discrimination if it confers particular privileges or imposes peculiar restrictions or disabilities upon a class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to the privileges granted or burdens imposed, and between whom and the persons not so favored or burdened no reasonable distinction or substantial difference can be found justifying the inclusion of one and the exclusion of the other from such privileges or burdens. The difference on which the classification is based must be such as, in some reasonable degree, will account for or justify the peculiar legislation. The following cases declare these rules: *Smith* v. *Judge,* 17 Cal. 555; *Pasadena* v. *Stimson,* 91 Cal. 251, [27 Pac. 604]; *Darcy* v. *San Jose,* 104 Cal. 645, [38 Pac. 500]; *Bloss* v. *Lewis,* 109 Cal. 499, [41 Pac. 1081]; *Marsh* v. *Hanly,* 111 Cal. 370, [43 Pac. 975]; *Ex parte Jentzsch,* 112 Cal. 474, [32 L. R. A. 664, 44 Pac. 803]; *Ex parte Giambonini,* 117 Cal. 574, [49 Pac. 732]; *Krause* v. *Durbrow,* 127 Cal. 684, [60 Pac. 438]; *Pratt* v. *Browne,* 135 Cal. 652, [67 Pac. 1082]; *Ex parte Sohncke,* 148 Cal. 267, [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956].

The women employed in hotels are, for the most part, chambermaids and waitresses. It is contended that the work of such persons in hotels is no more arduous or injurious to health than that in lodging houses and boarding houses, that they are all of the same class with respect to the need of such

protection, and, hence, that there is no substantial reason or difference in conditions which can justify the protection of those employed in hotels alone. The census returns show that in this state the number of boarding houses and lodging houses, combined, exceeds the number of hotels by about fifty per cent of the number of the latter. As the hotels are usually the larger institutions, it is probable that the number of women employed therein is about equal to those employed in the other places mentioned. In the matter of numbers there appears to be no ground for distinction. But there are other obvious differences. The patrons of lodging houses and boarding houses use them as places of residence. They are for the most part permanent occupants. Such places partake more of the nature of a home or residence than does a hotel. They are not accessible, as of right, to the public generally, as is the case with hotels. The occupants may be and often are selected by the proprietor, and frequently they compose a class having similar habits, tastes, and desires. An acquaintance arises between them and the servants and the servants soon become accustomed to the wants and ways of those by whom their services are required. The occupants of a hotel are of a more transient character. They come and go and change daily. They are usually entire strangers to the servants. Their habits are likely to be irregular and of great diversity as well as unfamiliar to the employees. These respective conditions must, or at least may, make the work of such employees in the other places materially different from those similarly employed in hotels. It is not unreasonable to suppose that those in the other places will be subject to less strain and tension than those who serve the more transient, varied, and indiscriminate guests of hotels, to whom they are generally entire strangers. The legislature, in view of all the above facts, may reasonably have so determined. In support of the law, as already stated, the courts are bound to presume that it did make this decision, and as there are sound reasons upon which it may rest, the decision must be accepted as correct. The conditions stated appear to be a sufficient basis for the classification made. In such matters the legislature cannot deal with individual cases. It can provide only for classes, and its decision as to the line of cleavage between classes in some particulars the same and

in other particulars different must be upheld where it is based on any reasonable grounds. We are of the opinion, therefore, that the law cannot be declared invalid because of this discrimination.

We cannot say that the exemption of persons employed in harvesting, curing, canning, or drying perishable fruits or vegetables from the operation of the law, makes an improper discrimination. These occupations can be carried on only for a short period of each year, the time of the annual ripening of the particular fruits or vegetables. In a cannery devoted to every kind of fruit and vegetable the work may continue much longer, but even those establishments are idle for a large part of the year. There is time for those employed therein to obtain rest and recuperation. It is also to be noted that, looking to the general welfare, there is a greater necessity for facility in obtaining employees to do such work than obtains in ordinary employments, for, unless the work is done at the proper time, great loss must ensue from the perishable nature of the products to be preserved. These are all matters which the legislature could properly take into consideration, and they constitute a sufficient justification for the exception. (See *State* v. *Somerville,* 67 Wash. 638, [122 Pac. 324], where it was held that a similar exception did not vitiate the women's eight hour law of the state of Washington.)

4. The title embraces but one general subject—the regulation of female employment. The subdivision of this subject by the particular details stated in the title does not make it embrace two subjects. The title is sufficient in this respect. We find no ground upon which the law can be declared void or the conviction in question invalid.

Let the petitioner be remanded to the custody of the sheriff of Riverside County.

Angellotti, J., Sloss, J., Lorigan, J., Melvin, J., and Beatty, C. J., concurred.

Rehearing denied.