[Civ. No. 17368. Second Dist., Div. One. Mar. 30, 1950.]

WILLETT & CRANE, INC., Appellant, v. CITY OF PALOS VERDES ESTATES et al., Respondents.

McLaughlin & Hutchinson for Appellant.

Donald Armstrong for Respondents.

WHITE, P. J.—The appellant, a property owner in the respondent city, appeals from an adverse judgment in an action to have a zoning ordinance declared void. Appellant's complaint contained two counts, one to enjoin respondent city from enforcing such ordinance; the other seeking declaratory relief declaring the ordinance void. According to the appellant's brief, "The action challenged the validity of the ordinance on the ground that it was unreasonable, and discriminatory, and . . . that respondent city did not follow the applicable statutory procedure in adopting the ordinance." The ordinance is termed by appellant, "a perversion of standard zoning principles," and one "substantially legislating business out of the city."

The respondent city, avers appellant's brief, "comprises an

area of 3,200 acres adjacent to the Pacific Ocean between Redondo Beach and Torrance that began as a real estate subdivision in the early twenties and was finally incorporated as a city of the sixth class in July, 1940. . . . It is subdivided into 5,200 lots of which approximately 475 are improved with residences. . . . The subdividers . . . created an elaborate set of restrictions'' which do not terminate until 1960.

Appellant's 11 lots were classified as business properties. These restrictions, however, ''did not prohibit their use as residential properties,'' but, according to appellant's brief, ''they were so plotted that they were impractical for use as residential lots, both because they fronted upon the principal public thoroughfare . . . and because several of the lots were too narrow to accommodate residences of the character being built in that locality.'' It appears that the frontages of most of appellant's lots were 48 or 50 feet, although a few were wider. These lots are vacant, and are located in four different blocks of the subdivision.

The trial court found that ''The population of the City of Palos Verdes Estates is 1,500, and the business buildings . . . are sufficient to take care of the business and shopping needs of the people now living in the City.'' Plaintiff's opening statement refers to the subdivision as ''fairly dead all these years until recently''; in appellant's brief it is said that ''Because of its isolated location the subdivision remained fairly static until after the commencement of the Second World War.'' In 1944, after the city's incorporation, but before adoption of the zoning ordinance, appellant had prepared plans for a shopping center to be erected on its property.

The zoning ordinance here under consideration, enacted in June of 1948, ''classified all lots as residential excepting thirty lots in the Malaga Cove district and eight lots in the Lunada Bay District.'' Appellant's lots, in what is known as the Val Monte District, are thus zoned as residential property, rather than according to the subdivider's classification of business property.

■ The appellant contends that the zoning ordinance is void because ''monopolistic and unreasonable'' in that ''it allocates a total of 38 lots out of a total of 5,200 lots for business and commercial use, including parking space,'' and disregards ''established principles of zoning which recognizes that a normal population for a city of 5,000 residential lots is 18,500, and that such a population would require at least

36 acres for commercial shopping centers to support it.'' The ordinance is criticized for disregarding other established principles of zoning, requiring ''that neighborhood shopping centers should be available to residents at a distance or radius of from one-fourth to one-half a mile,'' etc.; and for disregarding ''the physical location of appellant's lots . . . at the intersection of the two most important thoroughfares . . . and their consequent unfitness for residential purposes,'' and ''ignores the fact that appellant's lots have been plotted, subdivided and restricted for business and commercial use.''

The ordinance is also attacked ''for the reason that no public hearing was held before the City Planning Commission on the plan of zoning embodied in the ordinance,'' and that the action taken by the Planning Commission was not recorded on the zoning map, as required by zoning statutes. The trial court's refusal to reopen the case ''during the closing arguments after the court had indicated its intention to decide the case on the issue of what business properties might be necessary in the next few years,'' is also assigned as reversible error.

At the trial, plaintiff's expert witness, Mr. Alexander, gave testimony as to proper zoning practices in respect to shopping centers, etc., upon which testimony, uncontradicted, appellant bases the contention that the present zoning ordinance is unreasonable. There was evidence to the effect that appellant's lots were valuable and usable for residential purposes. The trial court in the company of counsel made a tour of the city, visiting the property in question and the surrounding territory.

The trial court found that the zoning ordinance was not unreasonable or void for any of the alleged reasons; that two public hearings were noticed and held prior to the adoption thereof; that plaintiff's property had not been rendered valueless or useless by the adoption of said ordinance. It was further found that plaintiff's lots ''are valuable and useful as residential properties, although in the future should that part . . . surrounding plaintiff's properties become fully developed, they will be worth slightly more as business property.'' From these findings the court concluded that plaintiff was entitled to no relief.

As pointed out in respondent's brief, no cases have been cited in support of appellant's contention that it is necessary that a zoning ordinance should ''provide shopping centers within a one-half mile of every residential lot.'' One of the

cases cited in appellant's brief, *Zahn* v. *Board of Public Works*, 195 Cal. 497, 513 [234 P. 388], says: "The power of the city council to zone is not limited in our opinion to the protection of established districts. To so hold would be to defeat in a large measure the very purpose of zoning which is to control future development in the best interest of the city. Zoning in its best sense looks not only backward to protect districts already established but forward to aid in the development of new districts according to a comprehensive plan having as its basis the welfare of the city as a whole."

Respondent's° brief calls attention to the recent case of *Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990], holding that "The wisdom of prohibitions and restrictions is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning authorities if there is any reasonable justification for their action." It is also there said (p. 467) that "the fact that some hardship is experienced or that it may be more profitable to make other use of the property is not controlling in determining whether the regulations are arbitrary or unreasonable."

*Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542], holds that "A city cannot unfairly discriminate against a particular parcel of land," but that "the mere fact that some hardship is experienced is not material, since 'Every exercise of the police power is apt to affect adversely the property interest of somebody.' . . . It is not sufficient for him [plaintiff] to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public, but he must show an abuse of discretion on the part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power."

Bearing in mind the rule that every intendment is in favor of such ordinances as the one now before us, that the enactment of such ordinance as a whole is a proper exercise of the police power and adopted to promote the general welfare, we are necessarily confronted with the question of whether the application of the ordinance to appellant's property is so oppressive and unreasonable as to amount to an illegitimate exercise of the police power. The wisdom of the prohibitions and restrictions is a matter for legislative determination. The

fact that a court may not agree with the legislative determination does not authorize the judicial bench of the government to substitute its judgment for that of the zoning authority if there is any reasonable justification for the action of the latter. In fact, as was said in *Lockard* v. *City of Los Angeles, supra,* at page 461, quoting from *In re Miller,* 162 Cal. 687, 696 [124 P. 427] :

" 'The rule is well settled that the legislative determination that the facts exist which make the law necessary, must not be set aside or disregarded by the courts, unless the legislative decision is clearly and palpably wrong and. error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice.' "

Under the facts of the instant case, it is manifest that the reasonableness of the ordinance is fairly debatable. Therefore, the ordinance must be upheld. (*Reynolds* v. *Barrett,* 12 Cal.2d 244, 249 [83 P.2d 29].)

There is evidence in the record that prior to the passage of the ordinance by the council of respondent city, a citizens committee was appointed to make a zoning study and make a report to the city council. The committee in the course of their study employed John Richerson, an engineer for the Los Angeles County Regional Planning Commission, to give it technical assistance and advice. The committee reported to the council of respondent city which turned the report over to the city planning commission, which latter commission was also advised and assisted by Mr. Richerson. The planning commission held two public hearings and the city council held three before the ordinance was finally adopted.

While it is true that but two business districts are provided for in the ordinance, the trial court found upon competent evidence that a business area commonly known as the Malaga Cove Business Area was created and laid out in Palos Verdes Estates in 1924 with a front footage of 2,100 feet. In 1924 and 1925, two two-story business buildings and one service station and garage were built in said Malaga Cove Business Area. Since 1925 no other business buildings have been erected in said Malaga Cove Business Area, except one two-story multiple dwelling and office building, which at the time of trial was nearing completion. The three buildings, the gas station and garage occupy front footage of less than 25 per cent of the total amount of front footage in said Malaga Cove Business Area. The court further found that the vacant 75 per

cent of said Malaga Cove Business Area is available for, and can be conveniently used for business buildings. That the population of the city of Palos Verdes Estates is 1,500, and that the business buildings in the Malaga Cove Business Area are sufficient to care for the business and shopping needs of the people now living in the city of Palos Verdes Estates. There was also evidence given by witnesses called by appellant that the latter's lots were valuable and usable as residential lots.

Appellant's assigned reasons for the contention that the ordinance here in question is unreasonable and monopolistic may be said to fall into two categories. The first is that the ordinance does not provide sufficient business area. The second is that appellant's property should have been zoned for business. In the light of the court's finding that 75 per cent of the area now zoned for business is vacant, and the rule laid down in *Reynolds* v. *Barrett,* 12 Cal.2d 244 [83 P.2d 29], appellant's argument relative to the first category must fall. The same may be said of appellant's argument relative to the second category because of the principles announced in *Lockard* v. *City of Los Angeles, supra,* and *Wilkins* v. *City of San Bernardino, supra.*

A reading of the record in the case now engaging our attention convinces us that the finding of the trial court that respondent city complied with the provisions of the California Conservation and Planning Act [Stats. 1947, ch. 807, 2 Deering's Gen. Laws, Act 5211c] is supported by the evidence. From a perusal of the pertinent sections of the act, we are satisfied that the construction placed thereon by the trial court was such as to make the act effective in its entirety, and avoided a construction that would have rendered it partly ineffective or inefficient (50 Am.Jur., pp. 361, 362).

We are satisfied that the trial court did not commit prejudicial error in denying appellant's motion to reopen its case in chief. The motion was made after both sides had rested and during the final arguments. The motion was evidently prompted by an observation or statement emanating from the court. Such a motion is directed to the sound discretion of the trial court. In the case at bar we find no showing of abuse of discretion, no showing that appellant's rights were prejudiced, or that if the evidence had been received it would have brought about a different result. In 24 California Jurisprudence, page 770, the rule is thus stated:

"A trial court may properly refuse to reopen a case for the introduction of additional evidence when there is no showing of any excuse for not having produced it at the trial or of due diligence; where the evidence, if received, cannot produce a different result, as where the proposed evidence is merely cumulative; or where no issue was raised by the pleadings to which the offered evidence is relevant."

In ruling upon the motion to reopen the case, the court said, in part: ". . . but the court should not permit a re-opening in a case at this late date unless there appears to be, first, a necessity therefor, and, secondly, that through no fault of counsel the evidence in question has not been presented. Now, that is particularly true when the question arises in counsel's mind by reason of a statement or an observation or a question emanating from the Court. As you know, I am very free in attempting to bring out all phases of the case and all phases of points of argument and issues so that we can look at them from every direction for the purpose of arriving at sound conclusions. That is hardly a good ground for asking that additional evidence be permitted after the parties have all rested. It is perfectly conceivable that if I permitted it and during the ensuing argument I asked another question which raised doubts in counsel's mind as to whether the evidence had been fully presented, a like request could properly be made. In view of the fact that this is not something that has suddenly arisen, not something that could not have been foreseen but, rather, was something that should have been foreseen and, further, that in itself it would not be determinative, the motion is denied."

It must therefore, be held that the ruling of the court was free from prejudice or error.

For the reasons herein stated, the judgment is affirmed.

Drapeau, J., concurred.

DORAN, J.—I dissent:

In my opinion the zoning ordinance, in the light of the record, is not only unreasonable but is arbitrary, unjust and unlawful. Manifestly, in certain circumstances, such ordinances are upheld as a proper exercise of the police power on the theory that the public welfare is involved. But, the "public welfare" can be and frequently is a much abused phrase. The courts are the only defense against abuse of power; indeed the people created the courts for just such a

purpose for the tendency for those in authority to abuse it is proverbial. Whether such action is the result of an ulterior motive or just a lack of judgment is beside the issue. The sole question is whether the ordinance is reasonable, lawfully adopted and does not invade vested rights.

The property involved are lots in a subdivision sold to the public years ago. The deeds contained restrictions. The buyers bought the lots subject to such restrictions. Such restrictive covenants amount to a contract among all of the buyers in the tract. Years later, as homes were built and when the population justified it, a municipal corporation was established which included all or part of the original subdivision. The city council then proceeded to adopt a "zoning ordinance." The ordinance definitely deprives appellant of a vested right to use the property for purposes that all of the purchasers of lots in the tract agreed it could be used for. The city council is without power to thus invade the constitutional right of contract and as a result divest appellant of a vested right.

The cases cited do not involve this issue, nor is it raised on appeal, nevertheless in my opinion it is controlling in the circumstances.

A petition for a rehearing was denied April 17, 1950. Doran, J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied May 25, 1950. Carter, J., and Schauer, J., voted for a hearing.