[Civ. No. 23006. Second Dist., Dist. One. Oct. 22, 1958.]

JOAB VIRTUE, Appellant, v. OLIVIA FLYNT, Individually and as Administratrix, etc., Respondent.

Freda B. Walbrecht for Appellant.

Crispus A. Wright for Respondent.

LILLIE, J.—Plaintiff appeals from a judgment in favor of defendant in an action to establish a resulting trust in the proceeds of the sale of real property.

The following facts are undisputed. Plaintiff Joab Virtue, his wife Patience and her brother, Emmon Drake, both now deceased, moved onto certain real property on June 5, 1937. It was purchased from the Orange Savings and Loan Association on that date for $1,700 and title thereto was taken in the name of Emmon Drake. Plaintiff worked for the city as a common laborer and earned approximately $125 per month. During this time Emmon operated a shoe shine stand. Patience died in August, 1943. After final payment on the property, and on June 7, 1945, Emmon executed to plaintiff a "joint tenancy" deed conveying to him a one-half interest in the property, the other one-half remaining in Emmon's name. Both parties continued to live thereon until Emmon died August 5, 1950. Defendant Olivia Flynt, his niece, was appointed administratrix of Emmon's estate. She inventoried as part of the estate the one-half interest in the property standing in Emmon's name and on July 8, 1952, sold it for $2,500, the court confirming the sale on July 29, 1952. Two months later, on September 24, 1952, the purchaser thereof filed a partition suit naming plaintiff herein as owner of the other one-half interest, and the entire property was sold. The plaintiff received and cashed a check for $900 for his one-half interest.

On February 19, 1954, plaintiff filed this action against defendant, individually, and as administratrix of the estate of Emmon Drake, to establish a resulting trust in the proceeds of the sale of Emmon's one-half interest, claiming that although he agreed to permit the record title to be held in Emmon's name, plaintiff actually paid the consideration for the entire property. The trial court held that plaintiff's evidence fell short "of the clear and convincing proof that the law demands"; made findings that substantially all of the allegations of plaintiff's complaint were not true; and directed judgment for defendant.

As his first ground for reversal, appellant urges that the trial court erred in failing to make a finding "that the con-

tract was legal" on the theory that although not raised by the pleadings, an issue relating thereto was raised at the trial.

Plaintiff's amended complaint alleged in substance that in June, 1937, he requested Emmon to purchase the real property in his name for plaintiff's benefit and delivered $200 to him for that purpose, that Emmon did so, plaintiff paid the balance due, and although held in Emmon's name the property actually belonged to plaintiff and was held by Emmon in trust for him. In her answer defendant denied the allegations of the complaint, in effect denying any such transaction took place. The defendant maintained throughout the trial that the interest held by Emmon was his own.

However, after plaintiff testified that he had made all of the payments on the property, defendant on recross-examination asked him why, if he paid the full consideration therefor, he permitted the property to be held in Emmon's name. It was then for the first time that there was any suggestion by plaintiff that he might have wished to claim a veteran's tax exemption through Emmon. No issue concerning the matter was raised by the pleadings. Several questions on recross-examination were asked plaintiff concerning this, but his answers were for the most part vague, incoherent and contradictory. Defendant did not pursue the subject further. At the close of plaintiff's case defendant moved for a nonsuit mainly on the ground that there was no evidence to sustain a trust. The trial judge then raised the question of an illegal consideration. To permit him to read the authorities on the point the court deferred the ruling on the motion for nonsuit to the end of the trial. Defendant on her case offered no evidence of any kind on the matter of tax exemption but proceeded on the single theory that the half interest in the property standing in the name of the deceased belonged to him alone and no such transaction alleged by plaintiff ever existed. At the close of the trial the judge in a memorandum opinion stated, *"plaintiff's* contention that the evidence in this case does not disclose an illegal transaction seems well founded." (Emphasis added.) There is in the record no further mention of this matter, and no finding relative to the "legality of the contract" was made.

 Appellant in his opening brief made the sweeping statement that "it is reversible error not to make a finding on an issue raised at the trial," for which he cited several cases. They are no authority for any such proposition but do hold, in accordance with the well-established law of this

484

state, that findings are required on all *material* issues raised by the pleadings and evidence unless they are waived and "if the court renders judgment without making findings on all material issues, the case must be reversed." (*Sharove* v. *Middleman,* 146 Cal.App.2d 199, 201 [303 P.2d 900], citing *James* v. *Haley,* 212 Cal. 142, 147 [297 P. 920], and *Fairchild* v. *Raines,* 24 Cal.2d 818, 830 [151 P.2d 260].) ■ It is well settled that if findings are made upon issues which determine the cause, other issues become immaterial and failure to find thereon does not constitute prejudicial error. (*Devers* v. *Greenwood,* 139 Cal.App.2d 345 [293 P.2d 834] ; *Metcalf* v. *Hecker,* 127 Cal.App.2d 634 [274 P.2d 188] ; *Vidler* v. *De Bell,* 125 Cal.App.2d 326 [270 P.2d 120].)

■ It is clear from the record that, although briefly mentioned by defendant in her opening statement to the court, the "issue" of legality arose primarily upon the motion for nonsuit as the result of the belated recross-examination of plaintiff. After plaintiff rested his case no further evidence on the subject of veteran's tax exemption was offered or received and no further point was made concerning it, the defendant at all times contending that deceased in his own right owned one-half of the property and that no transaction of any kind which could create a trust existed between him and plaintiff. Plaintiff argues that in holding, on the motion for nonsuit, that the evidence did not disclose an "illegal transaction" the court in effect found that a "contract" between plaintiff and deceased in fact existed contrary to its later written findings. We find no merit in this contention for when the court considered the matter of illegal consideration it was on the motion for nonsuit, even though the court's ruling thereon was deferred to the end of the trial. ■ On such a motion the court is bound to disregard conflicting evidence and give to plaintiff's evidence all the value to which it is legally entitled and indulge every legitimate inference which may be drawn from the evidence in plaintiff's favor. (*Golceff* v. *Sugarman,* 36 Cal.2d 152 [222 P.2d 665] ; *Lehman* v. *Richfield Oil Corp.,* 121 Cal.App.2d 261 [263 P.2d 13] ; *Imperial-Yuma etc. Credit Assn.* v. *Shields,* 88 Cal.App.2d 328 [198 P.2d 951] ; *Biondini* v. *Amship Corp.,* 81 Cal.App. 2d 751 [185 P.2d 94].) ■ In following this rule the trial court then could, and did, properly conclude that a transaction concerning the property existed between plaintiff and the deceased and that there was nothing illegal about it. Even then the trial court did not use the term "contract" or

"agreement." The use of the term "contract" is exclusively appellant's. This, however, did not preclude the court, after hearing and considering all the evidence, from later holding against the plaintiff on the merits and finding that he did not prove any transaction existed between him and the deceased. In the case of *Price* v. *Mason-McDuffie Co.*, 50 Cal.App.2d 320 [122 P.2d 971], the plaintiff urged that since defendant's motion for nonsuit was denied, and defendant thereafter offered no evidence, plaintiff was entitled to judgment. The court in holding otherwise said, at pages 326-327: "But in making this point plaintiff apparently overlooks the fact that in ruling on a motion for nonsuit all testimony introduced by the plaintiff must be taken as true; whereas in deciding the case on the merits, no such rule prevails." In deciding the instant case on its merits the lower court then, as it was unable to do on the motion for nonsuit, could weigh the evidence and determine the credibility of the witnesses, and from the evidence found that plaintiff had not proved the existence of any "contract" or "transaction" from which a trust resulted. If the legality of consideration once existed as an "issue" on the motion for nonsuit it, not having been raised by the pleadings or pursued further on defendant's case, disappeared at the end of the trial and no longer existed when the case was decided on its merits. Under these circumstances it could not constitute a material issue on which the trial court was required to make a finding in a determination on the merits, the court having found from the entire evidence that no transaction existed between plaintiff and decedent.

 As his second point, appellant contends the evidence shows a resulting trust in his favor, he having actually purchased and owned the property, although partly held in the name of decedent. The court below held against plaintiff on the basis that he had failed to sustain his burden of proof. The findings declared that the allegations of his complaint were not true. In reviewing conflicting evidence this court will presume that the evidence in support of the findings is true and will construe it and resolve every substantial conflict as favorably as possible in support thereof. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157]; *De La Motte* v. *Rucker*, 55 Cal.App.2d 226 [130 P.2d 444].)

 At the outset, to prevail in the lower court, the plaintiff had the burden of proving that he paid the consideration for the real property held by Emmon Drake. (Civ. Code, § 855.) After hearing all of the witnesses, observing their

demeanor, determining their credibility and weighing the evidence, the trial judge concluded that plaintiff's proof (particularly the "testimony of plaintiff himself") fell "short of the clear and convincing proof that the law demands of one endeavoring to establish such a trust," and made findings of fact accordingly—in effect finding that Emmon Drake owned the property held in his name.

The rule relating to the "uncontradicted testimony of a witness" alluded to by appellant has no application in a situation such as this in which contradictions occurred in plaintiff's own testimony and in the testimony of defense witnesses. The record before us discloses that although plaintiff without difficulty testified that he paid for the property in question; as to material details and matters surrounding the payments, execution of the two deeds and the sale of the property he was vague and indefinite, contradictory and failed to remember, frequently resorting to the answer: "I don't know nothing about it."

Although claiming to have made all payments on the property, plaintiff could not give the court the amount of the monthly payments nor had he any receipts therefor. At first he said his counsel had them, then later admitted he had none. He gave a variety of reasons why he permitted the property to be placed in Emmon's name, finally listing as one of the main ones that "he was living with us and wasn't paying rent like he should." As to his relationship with Emmon, plaintiff said he was to pay plaintiff $5.00 a week, but that he did not pay it regularly. The evidence shows Emmon was steadily engaged at his shoe shine stand, working every day as a bootblack, and made the real property his home from 1937 to the day he died. The court may well have inferred that Emmon paid the taxes and/or payments on the property in lieu of rent. Beulah Thomas, plaintiff's niece and his own witness, who lived with plaintiff, Patience and Emmon, testified that Emmon told her, "(T)his is my brother's and sister's home; our home," and that she had a home with them as long as she wanted one; and that she heard Emmon once say concerning the property that "they had to make some payment" on it and that "(B)rother and I have got to see somebody" about it.

Plaintiff testified he could not remember having had any conversation with Emmon when he executed to plaintiff the deed to the one-half interest in 1945, and denied going to a lawyer with Emmon, discussing the matter and having the

deed prepared; yet, under oath plaintiff alleged in his original complaint that on June 7, 1945, he asked Emmon to execute and deliver a deed to him, Emmon retained a lawyer to prepare it, and before doing so the attorney told plaintiff that because Emmon paid the taxes he should be entitled to an interest in the land, and that he would draft a joint tenancy deed, to which plaintiff agreed.

Plaintiff also had no memory of talking to defendant after Emmon's death about buying Emmon's half of the property, and then denied having talked to her about it at all; nor did he remember talking to James Gannon, attorney for the estate, about buying Emmon's half interest. Questioned further about it and other matters along that line plaintiff said: ''I don't know nothing about it.'' When asked if he received $900 as a result of the partition sale his counsel stipulated he had and when he denied cashing the check, she stipulated further that it had been cashed.

Of significance is evidence that on occasions when Mr. Gannon, defendant and the buyer of the estate's interest discussed with plaintiff Emmon's ownership of the one-half interest he remained silent and at no time asserted a claim to it, from which the trial court was free to infer that plaintiff, fully aware of the circumstances, willingly accepted the deed from Emmon in 1945, never actually believed the entire property belonged to plaintiff or that he had a right to believe it did, and that up to the filing of his complaint recognized Emmon's interest and conceded ownership of the one-half interest in the deceased.

Contrary to plaintiff's testimony James Gannon, attorney for Emmon's estate, testified that in 1951 or 1952 before the estate sold Emmon's one-half interest, he wrote to plaintiff asking him to sell his one-half interest along with the estate's interest so that the entire property could be sold at a better advantage, to which plaintiff replied he did not want to sell his interest; that thereafter he talked to plaintiff and tried to persuade him to sell his interest with Emmon's, but he again refused; that after the estate sold it, he again talked to plaintiff and asked him if the buyer had been around to collect rent from him and, upon being told he had not, he advised plaintiff to contact the buyer and either sell his interest to him or make a deal with him, to which plaintiff replied he did not want to sell. At no time did plaintiff ever assert ownership to the entire fee, nor did he claim Emmon's interest as his own.

Along this same line and contrary to the testimony of plaintiff, Olivia Flynt, defendant, testified that in 1951 she frequently visited plaintiff ''nearly every day'' and asked him what he wanted to do about the property and whether he wanted to buy the one-half interest in the estate, to which inquiries she either received no answer or a negative reply. At no time did plaintiff ever tell her he owned or claimed Emmon's one-half interest.

About two months after the estate sold its interest, the buyer in September, 1952, brought a partition suit against plaintiff which resulted in a sale. Nine hundred dollars of the proceeds thereof went to and were accepted by plaintiff as his share. The record is silent that at any time during this suit plaintiff ever questioned the ownership of the other half of the property or claimed it as his own. Nor did plaintiff do anything about his alleged claim, but instead accepted the benefits of the partition sale; and it is obvious that he had legal advice during this period because his present counsel stipulated at the trial herein that the $900 check plaintiff received from the partition sale ''was cashed through the attorney that he had gone to at that time.''

It is entirely reasonable to believe that plaintiff's conduct in connection with the ownership of the property may well have been the natural result of his full knowledge and understanding of the circumstances, his satisfaction with the deed and his recognition of Emmon's interest in the property when he accepted the deed from him in 1945 giving him only the one-half interest therein. It is obvious that the defense presented quite another side of plaintiff's story—plaintiff's silence as to his alleged ownership of the property at critical times; his adverse claim to Emmon's half interest asserted for the first time in 1954, almost 10 years after the joint tenancy deed was executed and two years after the sale of Emmon's one-half interest by the estate; his failure to claim the property in the partition suit and his acceptance of the $900 for his interest in the property.

Of course, all of this served to create a factual question which the trial judge, after hearing all of the evidence, had to resolve. He had little or no confidence in the plaintiff's story for he held that his evidence, particularly his testimony, did not measure up to the clear and convincing proof he needed to prevail. Considering the entire record the trial court was fully justified in holding there were not sufficient facts to sustain a resulting trust.

■ Appellant urges that the trial court erred in denying his motion to reopen the case to present further evidence. After trial and after the lower court filed its memorandum opinion, but before judgment was entered, plaintiff moved to reopen his case in chief for the purpose of offering in evidence a copy of a bank draft and photostat of a cashier's check in the sum of $289.58 to show he made the final payment on the property.

■ A motion to reopen a case in chief after both sides have rested and the matter is once submitted is directed to the sound discretion of the trial court. (Code Civ. Proc., § 662; *Willett & Crane, Inc.* v. *City of Palos etc. Estates,* 96 Cal.App.2d 757 [216 P.2d 85]; *Badover* v. *Guaranty Trust etc. Bank,* 186 Cal. 775 [200 P. 638]; *Axe* v. *County of Los Angeles,* 98 Cal.App.2d 578 [220 P.2d 781]; *Gelberg* v. *Consolo,* 51 Cal.App.2d 516 [125 P.2d 74].) ■ No abuse of discretion is here apparent. Plaintiff testified on direct examination that he transmitted final payment on the property by way of certified check in the sum of $287.08, purchased with his own funds. No one testified to the contrary. The proposed evidence was merely cumulative adding nothing to plaintiff's case ■ It is not an abuse of the trial court's discretion to refuse to reopen the case after submission to permit a party to introduce additional cumulative evidence. (*Kataoka* v. *Hanselman,* 150 Cal. 673 [89 P. 1082]; *Estate of Walker,* 148 Cal. 162 [82 P. 770]; *Nulty* v. *Price,* 202 Cal. 279 [260 P. 291].)

In view of our disposition of appellant's contentions, we deem it unnecessary to discuss his final point relating to the duty of a trustee to reconvey property to the true owner.

For the foregoing reasons the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1958.